(No. 15370.—Judgment affirmed.)

THE PEOPLE ex rel. W. S. Kessinger et al. Appellants, vs.
J. F. BURRELL, et al. Appellees.

*Opinion filed June 20, 1923.*

1. QUO WARRANTO—*unreasonable delay will justify denial of information.*  Unreasonable delay or acquiescence on the part of relators, as well as consideration of public interest or convenience, will justify a refusal to grant leave to file an information or to proceed to judgment in a *quo warranto* proceeding although no statute of limitations has intervened, and whether such reasons exist in a particular case calls for the exercise of judicial discretion in view of all the circumstances and the necessity and policy of allowing the remedy.

2. SCHOOLS—*when denial of information will be sustained because of delay and acquiescence.*  A judgment denying leave to file an information in the nature of *quo warranto* against officers of a community high school district will not be disturbed where the information was not filed until more than two years after the organization of the district, in which time taxes were levied annually, a bond issue was authorized, a school site purchased and a school conducted; and the fact that at an election to discontinue the district, a majority, but not the necessary two-thirds, voted to discontinue does not render the denial of the information an abuse of judicial discretion.

APPEAL from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding.

L. M. HARLAN, State's Attorney, and A. J. DUGGAN, for appellants.

A. H. BELL, and MURPHY & HEMPHILL, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The State's attorney of Macoupin county filed an information in this case in the name of the People of the State of Illinois, on the relation of 121 residents and legal voters in territory which had been designated as Hettick

Community High School District No. 194, calling upon the appellees, who assumed to exercise the powers of a board of education, to make answer to the People by what right they claimed to exercise the franchise of a community high school district. The abstract does not show that the sufficiency of the information was questioned or any plea filed to it or issue formed, but the cause was heard by the court on a stipulation of facts and the testimony of witnesses. A judgment was entered dismissing the information and awarding costs against the relators.

It was stipulated that the trial should be upon the following questions: First, is the school district in question composed of compact and contiguous territory within the meaning of the law? Second, have the relators been guilty of such *laches* in the premises as would defeat their right to the relief so sought? Third, has the court the power or ought it to grant the relief sought?

The material facts agreed upon are in substance as follows: On February 28, 1920, an election was held at which a majority of the votes cast were in favor of the organization of the territory as a community high school district. On March 27, 1920, members of a board of education were elected. The defendants are the successors in office of the board of education first elected and they were regularly elected as such officers. The territory is six miles wide and eight miles long. On June 5, 1920, an election was held on four propositions: First, the location of a school house site; second, for the purchase of such site and to build and equip a community high school house; third, to authorize the board of education to build and equip a combination school house within school district No. 62; fourth, for or against issuing bonds of the community high school district in the sum of $30,000. On the first proposition no site received a majority of the votes cast, and the board of education selected and purchased a site containing something over three acres in the village of Hettick. The propositions

to build and equip a community high school house and to issue bonds in the sum of $30,000 were carried by a majority vote.

The facts proved by witnesses were, that the board of education, when first elected, proceeded to exercise the powers of the office and selected and bought the site and bought an old abandoned church building which had become unfit for church uses and moved it on the site. The old building was divided into two rooms, and the board built another temporary room adjoining, with sides boarded up and down like a barn and lined with what was called plaster-board, which is a combination of pasteboard and plaster. The board hired three teachers and had three departments with a regular four-year course. The school was opened in 1920 with freshman, sophomore, junior and senior classes. At the time of the trial there were twenty-eight scholars attending the school, with three in the senior class, due to graduate in 1923, and eleven scholars living in the district attended high schools outside of the district, in Carlinville, Greenfield, Palmyra or Shipman. The board of education levied a tax of $10,000 in 1920, and the same amount was levied in 1921 and 1922. At some time in 1922, before the information was filed, an election was held to vote on the proposition of discontinuing the district, at which a majority voted in favor of the proposition, but the vote to discontinue was something less than two-thirds. The district is divided by three creeks. Hodges creek cuts off about one-half of the district on the east, and with considerable bottom land is subject to overflow and sometimes impassable. The two other creeks cut off about one-fourth of the district on the west.

There is no indication of the basis of the decision and judgment of the court, but if it was justified in the law for any reason appearing in the record the judgment should be affirmed. A proceeding by information in the nature of *quo warranto* is brought and carried on in the name of the

People, and unreasonable delay or acquiescence on the part of the persons complaining, as well as consideration of the public interest or convenience, will justify a refusal to grant leave to file an information or to proceed to judgment although no statute of limitations has intervened. Whether such reasons exist in a particular case calls for the exercise of judicial discretion in view of all the circumstances and the necessity and policy of allowing the remedy. (*Trustees of Schools* v. *School Directors,* 88 Ill. 100; *Board of Supervisors* v. *Magoon,* 109 id. 142; *People* v. *Boyd,* 132 id. 60; *People* v. *Schnepp,* 179 id. 305; *People* v. *Jackson,* 305 id. 385; *People* v. *Stewart,* 306 id. 470.) In a case requiring the exercise of judicial discretion much weight is ordinarily given to the judgment of the trial court upon the circumstances presented, although such judgment may be set aside, as was the case in *People* v. *Stewart, supra,* where it was held that the court erred in proceeding to judgment where there had been delay and acquiescence, from November 6, 1920, to May, 1922. In this case the district was organized on February 28, 1920, and the information was filed at the June term, 1922, of the circuit court. In the meantime there had been an election to choose a site and the site had been selected and purchased. An issue of bonds to the amount of $30,000 had been authorized on June 5, 1920, and a contract for the sale of the bonds had been made but not carried out because of a question concerning the legality of the district. The abandoned church building had been purchased and moved onto the site and the addition had been built, teachers had been hired and a school conducted, and annual levies of $10,000 taxes had been made and collected. The cost of the site does not appear and the building was not extensive or of great value. A majority of the legal voters were opposed to continuing the district and sought to dissolve it by an election, but no weight can be given to that fact. The law assumes that a majority of the legal voters in compact and contiguous territory are

competent to determine whether a community high school district shall be organized, but if under alluring promises and visions of higher education and public benefits the majority vote for such organization, at least two-thirds must exercise their judgment to abandon or discontinue the district as contrary to the public interest. The proposition to discontinue this district failed for want of such a proportion of the voters. While the attempt to discontinue the district is not to be taken as a recognition of its legal existence, the delay and acquiescence and changed conditions were such that it cannot be said that the refusal to enter judgment exceeded the bounds of judicial discretion.

The judgment is affirmed.     *Judgment affirmed.*