3 Ill.2d 159 (1954)
120 N.E.2d 887
THE PEOPLE ex rel. Lloyd Lindsey et al., Appellants,
v.
THE BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT No. 4 OF EDGAR COUNTY et al., Appellees.
No. 33276.
Supreme Court of Illinois.
Opinion filed July 13, 1954.
*160 WAYNE S. JONES, State's Attorney, of Paris, for appellants.
LAUHER & FRUIN, of Paris, and ACTON, BALDWIN, BOOKWALTER & MEYER, of Danville, (ROGER FRUIN and W.M. ACTON, of counsel,) for appellees.
Judgment affirmed.
Mr. JUSTICE MAXWELL delivered the opinion of the court:
The State's Attorney of Edgar County brought a quo warranto proceeding in the circuit court of that county against the Board of Education of Community Unit School District No. 4 of Edgar County, and the individual defendants as members or officers of that board, calling upon them to show by what authority they claim the powers and offices they purport to have and hold. Pleas of justification were filed, issues were formed by replication, a stipulation was made as to the facts, the cause was heard by the court, and the issues found for respondents. The People appeal to this court as a franchise is involved.
The pertinent facts are set out in the stipulation as follows:
I. HISTORY. Community Unit School District No. 4 of Edgar County, Illinois, hereinafter called District 4, was organized as the result of an election recommended by the Edgar County School Survey Committee under the School Survey Law (House Bill 406 of the 64th General Assembly). This election was held on March 27, 1948, and District 4 began operation on the 1st day of July, 1948.
II. GEOGRAPHY. District 4 is roughly rectangular in form and is composed of the rural area around Paris in Edgar County, *161 Illinois, and is bounded on the east by the Indiana State Line, about 8 miles east of Paris; on the south by the Clark County Line, about 9 miles south of Paris; on the west by other Community Unit School Districts, about 5 miles west of Paris; and on the north by Community Unit School Districts, a common grade district and a consolidated grade district, about 8 miles north of Paris. Paris Union School District No. 95, a special charter district maintaining grades 1 through 12, and whose territory is roughly coterminous with the city boundaries lies almost in the center of District 4 and is the hole in the doughnut of District 4.
III. HIGH SCHOOL ATTENDANCE. Prior to 1948 the territory of District 4 was non-high territory and parts or all of 51 common school districts were included in District 4. High School students from this territory have always attended Paris High School in substantial numbers and with few exceptions all of the high school students of this territory did attend Paris High School.
Paris High School has handled an enrollment of as many as 680 students and with some minor modifications and additions could handle approximately 800 students without serious overcrowding. In the school year 1953-54 Paris High School has an approximate enrollment of 635 including 230 from District 4, varying somewhat from day to day.
Paris High School facilities are substantially adequate for the present and projected high school enrollment of both districts; there are no cities, villages or incorporated towns in District 4 except the Village of Vermillion; and Paris is the school, church, trading and community center for the area of the entire district, with some small churches lying in District 4 and the eastern part of District 4 being within Indiana trading centers.
District 4 has not operated a high school within the District and is not at the time of entering into this stipulation planning a high school within the District. District 4 is furnishing transportation for all high school students residing within its territory to Paris High School and for the school year 1952-53 paid $69,024.94 tuition to Paris High School. This figure represents 42.2% of the total current operating expenditures for the Paris High School.
IV. BUILDINGS. In 1949 after the district had been in operation a year 29 school buildings were disposed of as unnecessary, unsuitable or inconvenient and at the present time the sale of four more buildings is contemplated because they are no longer suitable, convenient or necessary for school purposes. (Since this stipulation was made four additional school buildings have been disposed of at an election held for that purpose, in which the voters approved of the sale by a vote of 372 to 45.)
V. TRANSPORTATION. Children of District 4 are transported to the various attendance centers and to the high school by 21 buses. The average length of time each child is on the bus during the *162 school day is 28.4 minutes, only 162 children ride the bus as long as an hour in the morning (55) or evening (107) and no child exceeds a total riding time of 1 3/4 hours per day.
VI. POPULATION, VALUATION AND ENROLLMENT. District 4 is educating approximately 636 elementary students; approximately 230 high school students; has an equalized assessed valuation of $27,349,427.00 and has approximately 5500 population.
The stipulation then stated that following the passage of House Bill 496 in 1951, (Ill. Rev. Stat. 1951, chap. 122, par. 7-13,) providing that the board of education of community unit school districts shall establish a program of studies extending through grades one through twelve, the question whether District No. 4 should build its own high school facilities to the detriment of District No. 95 of Paris was considered by the Schools Problems Commission, and the conclusion of the commission was that in order to settle any legal questions House Bill 510 should be presented to the legislature. This was done, and the bill was adopted and approved on July 13, 1953. This act (Ill. Rev. Stat. 1953, chap. 122, pars. 734.2 and 734.3,) provides, briefly, that where a community unit school district has been organized around a special charter district, and a majority of the high school students of the unit district attend the special charter district high school, such unit district is a valid and a legally organized district, notwithstanding that grades nine through twelve are not being operated in the district. Section 2 of the act (par. 734.3) validates all previous acts of the district, the board and the officers thereof and provides that the persons acting as the board of education of such districts and their successors shall constitute the corporate authority of such district.
The quo warranto complaint filed December 28, 1953, charged that the Board of Education of District No. 4 was usurping powers and the individual members thereof were holding office without authority. The defendants filed their answer and pleas of justification, showing the organization of District No. 4 by the election held March 27, 1948, by *163 a vote of 591 for and 120 against; alleging that said territory was compact and continguous and complied with all statutory requirements; alleging that said district had been operating, furnishing school facilities for students in the district for grades one through eight, and furnishing transportation and tuition for all high school students in the Paris high school; and alleged that the validating act of the legislature cured and validated any deficiencies and irregularities which may have existed in the organization of the district. The replication, which formed the issues, denied (1) that District No. 4 is compact and contiguous within the intendment of the statutes, (2) that education was being furnished students in grades nine through twelve within the intendment of the legislature by furnishing transportation and tuition, and (3) that the purported validating act validates these objections, validates the district or gives any authority to the board or its members. Defendants moved to strike denial (2) on the ground that the matter raised thereby could not be considered in the quo warranto proceeding. This motion was denied by the court.
Appellants, the People, here contend that the territory comprising District No. 4 is not contiguous and compact containing a natural school community as contemplated by the statute; that the said district has no intention of establishing a high school as required by section 7-13 of the School Code as amended in 1953, requiring such action by September 1, 1955; that the validating act excusing this requirement is invalid as special and local legislation in violation of section 22 of article IV of the Illinois constitution, and the district will therefore be dissolved by operation of statute; and that the trial court erred in finding this cause of action is barred by laches and estoppel.
At the outset, we refuse to consider, in the present proceeding, the requirements of said section 7-13, and the application of the validating act to that section, since we are of the opinion that those questions cannot be presented *164 in this quo warranto proceeding. The only questions that were properly before the trial court were whether this district was legally organized and whether appellees as members of the board of education were acting without authority or warrant of law. The amendment to section 7-13 of the statute upon which appellants rely was passed and approved July 13, 1953, and requires establishment of a high school in District No. 4 before September 1, 1955. Obviously, this act could not affect the validity of the organization of the district in 1948 or the acts of the members of the board before its passage. Nor do we believe it presently affects the validity of the functions of the district now being performed. If the board fails to comply with this requirement, the questions of automatic dissolution by the statute and of the validity of the validating act would then arise. There is nothing in the act requiring the board to act now. The present intentions of the board or its members to fail to act in the future do not affect the legality of the acts and functions of the past and present. Nor does the stipulation of the parties here aid appellants. Such stipulation as to a present intention of future conduct is not binding upon the members of this board, their successors in office, nor upon this court. We cannot assume that the present board will not change its intention, that their successors will not comply with the act or that the legislature may not repeal the act before September 1, 1955. We cannot invalidate the district for a contingency which may never occur. We therefore cannot consider the present intention of the board not to comply with the requirements of section 7-13 as affecting the validity of the organization of the district or as affecting the power and authority of the members of the board to do the things in which they are now and have been engaged. Appellees below moved to dismiss this plea in the appellants' replication and the court denied that motion. That motion should have been allowed.
*165 The vital question in this case is whether this action is barred by laches or estoppel. Appellees contend that it is and the trial court so found. Appellants in their brief and argument here do not answer appellees' contention that laches bars raising the question that the district is not compact and contiguous. They say merely "Regardless of the effect that laches and estoppel might have upon other questions involved in this case, there would be no bar to the complaint that the district is not, and does not intend to comply with Sec. 7-13 of the school code, requiring a district to operate grades one through twelve inclusive, in a school within the district." Since we regard this as outside the scope of the quo warranto inquiry they have not answered appellees' contention that laches or estoppel bars this proceeding.
The application of the doctrine of laches or estoppel to quo warranto actions brought in the name of or for the benefit of the People has, by generalities uttered by the courts, been somewhat confused and conflicting. Under the maxim "nullum tempus occurrit regi" the basic rule is that lapse of time constitutes no bar to the action brought in behalf of the People. People ex rel. Slusser v. Gary, 196 Ill. 310; People ex rel. Healy v. Shedd, 241 Ill. 155.
Some cases attempt to distinguish between quo warranto actions brought for the benefit of the public and those brought to enforce private rights. People ex rel. Universal Oil Products Co. v. Village of Lyons, 400 Ill. 82; People ex rel. Shriver v. Frazier, 386 Ill. 620; People ex rel. Cole v. Kinsey, 294 Ill. 530; People ex rel. Meishner v. Keigwin, 256 Ill. 264.
In a number of cases, however, it has been held that, under proper circumstances, laches may be asserted against the State. (Jameson v. People ex rel. Nettleton, 16 Ill. 257; People ex rel. Eicholtz v. Stewart, 306 Ill. 470; People ex rel. Howard v. Schnepp, 179 Ill. 305; People ex rel. *166 Misner v. Hanker, 197 Ill. 409; People ex rel. Kessinger v. Burrell, 308 Ill. 600; People ex rel. Prather v. Miller, 331 Ill. 395; People ex rel. Zimmer v. Jones, 308 Ill. 246; People ex rel. Osborn v. Cox, 311 Ill. 529.) In Jameson v. People, 16 Ill. 257, in an opinion rendered in 1855, this court applied the doctrine of laches against the State. At page 259 of this opinion the court states, "Municipal corporations are created for the public good  are demanded by the wants of the community; and the law, after long continued use of corporate powers, and the public acquiescence, will indulge in presumptions in favor of their legal existence. [Citations.] The law will incline to sustain, rather than to defeat them." In People v. Jones, 308 Ill. 246, the relators as taxpayers challenged the validity of the organization of a high school district and the issues were stipulated to be whether the district was compact and contiguous, constituted a community center, whether the proceeding was brought for the public or for the private interests of relators, whether relators acquiesced in the formation of the district so as to justify refusal of a judgment of ouster, and whether the public will suffer inconvenience or detriment by reason of the delay in filing the petition and judgment thereon. In affirming the trial court's dismissal of the complaint the court said, at page 249: "The writ of quo warranto is not a writ of right but lies in the sound discretion of the court, which may consider all the circumstances and conditions, the motives of the relators in having the proceeding instituted, and whether the public interest will be served or damaged by the writ. [Citations.] It was held by this court in People v. Stewart, 306 Ill. 470, that acquiescence on the part of the public, generally, in the proceedings and acts of the district in the election to organize the district, held on November 6, 1920, and in their acts subsequent thereto and prior to the filing of the information, justified a refusal of a judgment of ouster on the ground of acquiescence *167 of the public and of the great inconvenience and public detriment which would result in making the writ absolute. It so appears here. No excuse appears to be offered for the delay in bringing this proceeding. The board of education was permitted to use powers in which the people and tax-payers of the district were vitally concerned, with knowledge on the part of the relators of what was being done. Great inconvenience and public detriment would result from a judgment of ouster in this case."
The rule that laches is not usually applied against the State has been created for the benefit and protection of the public. It should not be reversed in its purpose and applied where it results in public detriment and harm. The courts therefore should, in all quo warranto proceedings, consider all the circumstances of the case and where it appears that harm rather than benefit will be done to the public welfare, the application of laches against the public is justified.
We think the trial court was justified in finding in this case that public acquiescence barred this quo warranto proceeding. There is nothing in the record to show any excuse for the delay of five years in filing the complaint. The organization of the district by election, its territorial boundaries, and the exclusion of the city of Paris were all matters of public knowledge. The acts of the board and its members in levying and collecting taxes, disposing of school buildings, purchasing school buses, issuing anticipation warrants and operating the schools were all known to and acquiesced in by the public. That great inconvenience and detriment would result to the public by a judgment of ouster is obvious. Such a result would leave 636 elementary students without school facilities or funds to provide them and 230 high school students would be without transportation or funds to pay their tuition. All the included common school districts have ceased to exist, their buildings have been disposed of and cannot be returned. On the other hand, the record fails to show and we are *168 unable to conjure any benefit to this community or to the public generally by a judgment of ouster in this case.
We can and do see, however, great potential harm to the public generally in permitting the State to challenge the legality of the organization of a municipality without regard to the passage of time. If a judgment of ouster can be entered at any time, however remote, for an irregularity in the organization of a municipality, and all the acts of its officers invalidated, the credit of municipalities generally may be so hampered that they will be unable to perform the public functions for which they are created.
For these reasons, the judgment of the circuit court of Edgar County dismissing this quo warranto complaint is affirmed.
Judgment affirmed.
Mr. JUSTICE BRISTOW took no part in the consideration or decision of this case.