1996 SD 116

**CENTRAL MONITORING SERVICE, INC., Plaintiff and Appellee,**

v.

**Stanley ZAKINSKI, Defendant and Appellant.**

**No. 19371.**

Supreme Court of South Dakota.

Argued March 11, 1996.

Decided Sept. 4, 1996.

Gene N. Lebrun of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellee.

Wayne F. Gilbert of Johnson Huffman, Rapid City, for defendant and appellant.

RUSCH, Circuit Judge

The defendant, Stanley Zakinski (Zakinski) appeals from a decision of the trial court granting an injunction which forbids him from working for any competitor of Central Monitoring Service, Inc. (Central) in the State of South Dakota for a period of two years or from disclosing certain information about Central at any time.[1]

We affirm in part, reverse in part and remand.

## ISSUES

This case presents two different issues, namely, whether a noncompetition agreement entered into subsequent to the original employment contract requires addi-

---

1. The injunction provided:

1. That the Defendant ... be enjoined for a period of two years ... or until such time as the Plaintiff ... is no longer engaged in the security services business, whichever is the shorter period of time, from:

(a) being employed by Ronald Conrad d/b/a Conrad's Big C Electric or d/b/a Security Plus ... or from participating directly or indirectly, personally or as the agent or employee of another, in the ownership, management, operation or control of any business similar to the type of business conducted by Central ... that is, security services;

(b) from notifying any customer of Central ... that Zakinski has accepted employment from Conrad or any other entity providing security services that does business in the state of South Dakota; and

(c) from directly or indirectly soliciting or aiding in the solicitation of the transfer, including the mailing or assistance in the mailing of any transfer of account forms, any customers having accounts with Central ... that Zakinski had dealings with while he was an employee of Central....

2. That Defendant ... be permanently enjoined from:

(a) removing any records of Central ... or portions thereof, including the names and addresses of Central['s] ... customers, from the premises of Central ... either in original form or duplicate or any copy form or any facts contained in such records; and

(b) from disclosing any of Central['s] ... business and proprietary technical and nontechnical information, including inventions, discoveries, designs, improvements, security codes or customer lists.

tional consideration and whether the agreement at issue here is reasonable.

## FACTS

 Central is a South Dakota Corporation which provides security services. Central is owned by Kenneth Knight and his wife Marcey Knight. Kenneth Knight has been in the security business in Rapid City since 1984, and incorporated his company in December 1992.[2]

 In December 1991, Knight hired Zakinski as a security consultant and sales representative upon the recommendation of another employee, Jack Wright. Zakinski had spent twenty-three years in law enforcement and had been in the private security business for approximately ten years.[3] He is now sixty years of age.

 The employment agreement between Knight and Zakinski was oral and both parties admit there was no discussion of a non-compete agreement at the time he was hired. Six months later, in June 1992, Knight asked all of his employees, including Zakinski to sign a Non–Compete And Confidentiality Agreement (the agreement). Knight and Zakinski were alone in the Central office when the request was made and there is a dispute about what was said.[4]

 Knight did not tell any of his employees that they would be fired if they did not sign the agreement and he admits that he never fired any employee for not signing the agreement. However, he claims that he always considered such an action to be an available option. Only employee Jack Wright refused to sign the agreement.

 Jack Wright continued to work for Central until the spring of 1995 when he quit and went to work for a competitor. About one month later, Knight fired Zakinski. Knight testified that this discharge occurred because he believed that Zakinski, "was lacking in technical ability in many of the systems" and that he was of no value to Central. At the time of his firing, Zakinski was informed that Central intended to enforce the agreement against him.[5] Nevertheless, within one month, Zakinski went to work for a competitor. Shortly after beginning the new employment, Zakinski was again warned that Central would enforce the agreement. When Zakinski did not quit his new employment, Central brought this action for an injunction restraining him from violating both the non-compete and the non-disclosure portions of the agreement.

## DECISION

 Noncompetition (non-compete) and confidentiality (non-disclosure) agreements are both contracts in restraint of trade and generally, contracts in restraint of trade are void. SDCL 53–9–8 provides:

---

**2.** Prior to incorporation Knight did business as Knight Security Systems.

**3.** After he left law enforcement and before his employment by Central, Zakinski worked for Industrial Security and Safety Supply, another company in the security business.

**4.** Knight claimed that the only conversation was an explanation of what the agreement meant, and what it would do for the company and its employees. He claims that Zakinski was told that everybody was being asked to sign the agreement, and that it was for the protection of the company and it employees. Zakinski claimed that at the time the agreement was presented to him, he asked about job security and Knight told him not to worry, he would be kept until he was ready to retire. Knight denied making this statement. Zakinski also claimed that Knight told him that all of the employees were going to sign the agreement and never told him that Wright refused to sign it. Knight testified that he re-

quested all of his employees to sign the agreement, but Jack Wright refused to sign it. Knight admitted that he did not force the issue with Wright because he was a valuable employee and Knight didn't want to lose him.

Although no one else was present at the time the non-compete agreement was signed, Jack Wright testified that he heard a later conversation between Knight and Zakinski where Zakinski expressed concern about a sales account being given to another salesman and that he heard Knight say, "I told you that I would keep you until you retire. Don't worry about it." Zakinski's wife also testified that at a dinner with Knight, Knight told her that as long as he was in business Zakinski had a job.

**5.** Knight testified that he would enforce the agreement because he believed that Zakinski was a threat to his business because he had extensive customer contact while employed, had received extensive training, had seen customer lists, and had seen bidding information.

Every contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-11, inclusive.[6]

SDCL 53-9-11, which is in issue in this case, is one of the exceptions to SDCL 53-9-8. Such exceptions must be construed narrowly so as to promote the prohibition against contracts in restraint of trade. *American Rim & Brake, Inc. v. Zoellner*, 382 N.W.2d 421, 424 (S.D.1986).

### ■■ I. The Confidentiality Portion of the Agreement.

■ ■■ The agreement signed by Zakinski was both a "Non-Compete *and* Confidentiality Agreement." A non-compete agreement and a confidentiality or non-disclosure agreement are two different things.[7] In *1st American Systems v. Rezatto*, 311 N.W.2d 51, 56 (S.D.1981) this Court said "the trial court erred because the contract was divisible and a non-disclosure agreement differs from a noncompetition agreement."

■ ■■ Zakinski conceded during oral argument that he was not contesting the non-disclosure portion of the injunction which enjoined him from removing any of Central's records, including the names and addresses of Central's customers, from Central's premises either in original form or duplicate or any copy form or any facts contained in such records or from disclosing any of Central's business and proprietary technical and non-technical information, including inventions, discoveries, designs, improvements, security codes or customer lists. A party is bound by the concessions that they make during oral

argument. *Bienert v. Yankton School District 63-3*, 507 N.W.2d 88 (S.D.1993); *State v. Hurst*, 507 N.W.2d 918 (S.D.1993); *Poppen v. Walker*, 520 N.W.2d 238 (S.D.1994), footnote 28.

### ■■ II. The Non-Compete Portion of the Agreement.

■■ However, Central is requesting enforcement of the agreement so that not only is Zakinski prevented from disclosing any of its confidential information but so that he is prevented from employment anywhere in the state of South Dakota by any competing private security business for a period of two years. Zakinski claims that the non-compete portion of the agreement is unenforceable because there was no consideration for it.

### ■■ A. Consideration for a non-complete agreement.

■■ Consideration is an essential element of a contract both under common law and by statute in South Dakota. *Andrews v. Bellman*, 50 S.D. 21, 208 N.W. 175, 176 (1926); SDCL 53-1-2(4).[8] In this case the non-compete agreement was entered into after Zakinski had been employed for about six months. After signing the agreement, Zakinski's duties and compensation did not change. Zakinski was not told that his continued employment hinged upon execution of the agreement. Both parties agree that the question which must be decided is whether additional consideration is required in order to enforce a non-compete agreement entered

---

6. SDCL 53-9-9 and 53-9-10 have no application in this case so the only issue is whether SDCL 53-9-11 authorizes this contract.

7. Employers generally use two types of contractual covenants to protect their legitimate business concerns. First, a noncompetition covenant typically operates to restrict competition for a specified period of time and over a designated geographical area. Similarly, such covenants may be used to prevent the employee from exploiting customer contacts established prior to termination. Although noncompetition covenants may be useful in deterring unfair competition, courts have historically viewed such covenants as restraints on trade.... Employee restrictive covenants may likewise assume the form of nondisclosure clauses

which protect against dissemination of an employer's trade secrets, confidential business practices, price lists and marketing strategies unique to the employer's business. Employee Restrictive Covenants: Unscrupulous Employees v. Overreaching Employers, 27 SDLRev 220, 221-222.

8. SDCL § 53-1-2 says:

Elements essential to existence of a contract are:
(1) Parties capable of contracting;
(2) Their consent;
(3) A lawful object; and
(4) Sufficient cause or consideration.

into after employment has begun.[9]

■■■■ The trial court found that there does not have to be any new consideration for a non-compete agreement even though it is entered into after an employee has been employed for a period of time.[10] Such a legal conclusion is fully reviewable by this Court on appeal, on a de novo basis, and no deference is given to the trial court's conclusions of law. *Centrol, Inc. v. Morrow,* 489 N.W.2d 890, 893 (S.D.1992).

■■ The fact that Zakinski entered into the non-compete agreement six months after beginning his employment with Central does not make a difference because SDCL 53-9-11 authorizes an employee to enter into a non-compete agreement with an employer at the time of employment or *at any time during his employment.* However, Zakinski maintains that this statute does not eliminate the need for consideration.

■■ In *American Rim & Brake, supra,* this Court held that standard contract law governs the enforceability of a non-compete agreement. In that case the Court said:

> Both defendants were already employed when they signed the employment agreement, and received no additional compensation. It was conceded at oral argument, however, that when originally employed defendants signed an employment contract containing a noncompetition clause in different form. Defendants were asked to sign these contracts containing a less restrictive noncompetition clause following the 1984 revision of SDCL 53-9-11. In light of this, we deem this argument to be without merit, considering SDCL 53-8-7.

*Id.* 382 N.W.2d at 424.

■■ SDCL 53-8-7, provides that "A contract in writing may be altered by a contract in writing *without a new consideration* or by an executed oral agreement, and not otherwise. (emphasis supplied)."

9. Neither party disputes that when a non-compete agreement is signed at the beginning of the employment, it can be considered to be part of the entire consideration and therefore bargained for.

■■ ■■ Zakinski argues that the holding in *American Rim & Brake* does not apply to this case because that case involved a written modification of an existing written employment agreement whereas in this case there was no earlier written employment agreement. He argues that since his employment agreement was oral, SDCL 53-8-7 has no application to his case. He is correct that SDCL 53-8-7 applies only to modification of written contracts so it has no application to this oral contract but SDCL 53-8-6 is fatal to his argument. It provides:

> A contract not in writing may be altered in *any respect* by consent of the parties, in writing, without a new consideration, and is extinguished thereby to the extent of the alteration (emphasis supplied).

■■ Both *American Rim & Brake* and *Centrol* recognize that SDCL 53-8-7 permits alteration of written contracts without new consideration. SDCL 53-8-6 provides for the alteration of oral contracts as well without the need for new consideration. In fact, SDCL 53-8-6 is broader than SDCL 53-8-7 because it allows the alteration *in any respect.*

■■ ■■ Clearly, under SDCL 53-8-6, if the non-compete agreement between Central and Zakinski is an alteration of the existing employment contract, no new consideration is required. However, if the non-compete agreement is a completely new contract, new consideration is required.

■■ ■■ The words "in any respect," used in SDCL 53-8-6, indicate that a broad interpretation should be applied. "Any" as used in a statute means "all" or "every" and suggests a broad and expansive meaning. *O'Connor v. Wells,* 252 N.Y.S.2d 861, 863, 43 Misc.2d 1075 (N.Y.Sup.1964); *State v. Zueger,* 459 N.W.2d 235, 237 (N.D.1990); *Christianson v. City of Bismarck,* 476 N.W.2d 688, 690 (N.D.1991).

10. Zakinski appeals from Conclusion IV which states:
That the Non-Compete and Confidentiality Agreement executed by Zakinski on June 9, 1992, required no additional consideration to be binding and enforceable.

The facts in this case indicate that the non-compete agreement was not a "stand-alone" agreement but was part and parcel of the employment agreement. Central could not enter into a non-compete agreement with a non-employee because SDCL 53–9–11 allows non-compete agreements only between employers and employees. If the employment relationship did not exist, such a non-compete agreement would be barred by SDCL 53–9–8. The oral employment agreement was modified or altered by adding the non-compete agreement. That alteration of the oral contract was done in writing. Under the terms of SDCL 53–8–6 no additional consideration was necessary.

### B. Sufficiency of the consideration.

The trial court held at Finding of Fact VII:

That the consideration for Zakinski entering into a Non–Compete and Confidentiality Agreement was continued employment, and the mutual benefit to Central Monitoring and its employees. That mutual consideration was the preservation of the integrity of Central Monitoring and the opportunity for continued employment of its employees.

In light of the court's holding that no additional consideration is necessary for a non-compete agreement, it is unnecessary to reach the issue of whether there was sufficient consideration for the agreement in this case.

### III. Reasonableness of the Agreement.

The final issue raised by Zakinski is the reasonableness of the non-competition and confidentiality agreement. He raises this issue in two respects: 1) that the area of the agreement is unreasonable, and 2) that the agreement is unreasonable in that its enforcement will work a hardship and oppression on him.

### A. *Restatement of Contracts* View.

Many states apply a test of reasonableness in determining whether to enforce a non-compete or non-disclosure agreement. *Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28, 32 (Tenn.1984); *Mattison v. Johnston,* 152 Ariz. 109, 730 P.2d 286, 288 (App.1986); *Showe–Time Video Rentals, Inc. v. Douglas,* 727 S.W.2d 426, 433 (Mo.App. 1987); *Gomez v. Chua Medical Corp.,* 510 N.E.2d 191 (Ind.App.1987); *Bertotti v. C.E. Shepherd Co., Inc.,* 752 S.W.2d 648, 657 (Tex. App.1988); *Empiregas, Inc. of Kosciusko v. Bain,* 599 So.2d 971, 975 (Miss.1992); *Brockley v. Lozier Corp.,* 241 Neb. 449, 488 N.W.2d 556, 563 (1992); *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531 (Wyo.1993); *Insulation Corp. of America v. Brobston,* 446 Pa.Super. 520, 667 A.2d 729, 733 (1995).

The criteria used to determine whether such an agreement is reasonable is set out in Restatement (Second) of Contracts § 188:

Ancillary Restraints on Competition

(1) A promise to refrain from competition that imposes a restraint that is ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade if

(a) the restraint is greater than is needed to protect the promisee's legitimate interest, or

(b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.

(2) Promises imposing restraints that are ancillary to a valid transaction or relationship include the following:

\* \* \* \* \* \*

(b) a promise by an employee or other agent not to compete with his employer or other principal;

An explanation of "reasonableness" as it relates to non-competition agreements appears at *Unreasonableness of Covenant Not To Compete,* 20 Am.Jur. Proof of Facts 3d 705, § 3:

In employment cases, reasonableness breaks down into three issues: (1) whether the restraint is reasonable as to the employer, (2) whether the restraint is reasonable as to the employee, and (3) whether the restraint is reasonable as to the public.

More elaborately, the questions are usually propounded as follows:

- Is the restraint reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate interest?
- Is the restraint reasonable in the sense that it is not unduly harsh and oppressive on the employee?
- Is the restraint reasonable in the sense that it is not injurious to the public?

Those states which have adopted the *Restatement* view perform a balancing test in which they consider the interests of the employer, the employee and the public in determining whether they will enforce such an agreement.

### B. South Dakota Cases.

There have been three recent cases in South Dakota in which the Court has considered SDCL 53–9–11 and whether such a balancing test must be applied.

In *American Rim & Brake* the Court held that no balancing of interests is necessary where an employee voluntarily quits his job and goes into competition with his former employer. 382 N.W.2d at 424. The Court also held that non-compete agreements are excepted from the prohibition against restraints on trade (SDCL 53–9–8) as long as they comply with the statutory language. It went on to say:

> SDCL 53–9–11 allows employers and employees to make exactly the kind of agreement entered into between American and defendants, without a further showing of reasonableness.

382 N.W.2d at 424.

More recently this Court decided the case of *Centrol, Inc. v. Morrow.* That case also concerned employees who voluntarily quit their jobs and go into competition with their former employer.[11] The Court in *Cen-*

trol, Inc. quoted the above language from *American Rim & Brake* indicating that no further showing of reasonableness is necessary if the non-compete agreement complies with SDCL 53–9–11.

Only one of the cases involved a fired employee, and in that case the Court required a balancing of the factors set out in the *Restatement* in order to determine whether the agreement was reasonable. In *1st American Systems, Inc. v. Rezatto,* 311 N.W.2d 51 (S.D.1981) where the employee was fired, the Court pointed out the difference between the non-compete and the non-disclosure portions of the agreement. It held that the non-competition portion of the agreement was invalid because the employee was not a licensed professional as was required by the statute at that time.[12] However, the Court went on to hold that the non-compete portion and the non-disclosure portion of the agreement were separate and divisible and then engaged in a balancing of the parties' interests (using the three criteria from the *Restatement* ) to determine whether the non-disclosure portion of the contract was reasonable. In that case the Court said:

> The reasonableness of each provision is the benchmark for partial enforcement of the instant covenants. "[A] covenant is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee and (3) is not injurious to the public." This test is then applied to the duration, area limitations, and range of activities covered in the agreement. (citations omitted).

*Id.* 311 N.W.2d at 59.

### C. The distinction between employees who quit or are fired.

It appears from these cases that when an employee is fired, this Court has applied a balancing test to determine reason-

---

11. In that case, for a period of time before leaving the employ of Centrol, the employees disparaged Centrol to their customers, told them of their plans to start a competing business and solicited their business. In addition they took extensive confidential records from Centrol and used them in their own business.

12. The Court in *1st American Systems* specifically stated that the "covenants" at issue were subject to the rule of reason. Since the Court referred to covenants in the plural, they had to be referring to both the non-disclosure and the non-compete covenants. *1st American Systems,* 311 N.W.2d at 59.

ableness utilizing the factors from the *Restatement (Second) of Contracts*. However, when an employee voluntarily quits and goes into competition with his former employer, as long as the agreement complied with SDCL 53–9–11, the Court considers it to be reasonable.

■■■ Other states also consider this quit/fired distinction in determining how a non-compete agreement should be enforced. In *Central Adjustment Bureau, Inc. v. Ingram*, the Court said:

> Another factor affecting reasonableness is the circumstances under which an employee leaves. Although an at-will employee can be discharged for any reason without breach of the contract, a discharge which is arbitrary, capricious or in bad faith clearly has a bearing on whether a court of equity should enforce a non-competition covenant.

*Central Adjustment Bureau*, 678 S.W.2d at 35.

■■■ In *Insulation Corp. of America v. Brobston*, 667 A.2d at 735 the Court said:

> Where an employee is terminated by his employer on the grounds that he has failed to promote the employer's legitimate business interests, it clearly suggests an implicit decision on the part of the employer that its business interests are best promoted without the employee in its service. The employer who fires an employee for failing to perform in a manner that promotes the employer's business interests deems the employee worthless. Once such a determination is made by the employer, the need to protect itself from the former employee is diminished by the fact that the employee's worth to the corporation is presumably insignificant. Under such circumstances, we conclude that it is unreason-

able as a matter of law to permit the employer to retain unfettered control over that which it has effectively discarded as worthless to its legitimate business interests.[13]

*See also Ma & Pa, Inc. v. Kelly*, 342 N.W.2d 500 (Iowa 1984); *Showe-Time Video Rentals, Inc. v. Douglas; Mattison v. Johnston*, 730 P.2d at 290. Even the language from 6A Corbin, Corbin on Contracts, § 1394 (2d Ed. 1962) which was furnished to the court by Central in its supplemental filing, supports this view.

> It is the function of the law to maintain a reasonable balance, and this requires us to recognize that there is such a thing as unfair competition by an ex-employee as well as unreasonable oppression by the employer. The circumstances of each case must be carefully scrutinized.

*Corbin*, § 1394.

■■■ In this case the trial court did not make an effort to balance the interests of the employer, the employee and the public in determining whether the non-compete and confidentiality agreement between Central and Zakinski was reasonable. The trial court apparently acted under the assumption that *Centrol, Inc.* and *American Rim & Brake* (both of which cases involved employees who quit) required that no further showing of reasonableness was necessary as long as the non-compete agreement complies with SDCL 53–9–11. However the trial court failed to consider *1st American Systems* (where the employee was fired) which held that a non-compete agreement or non-disclosure agreement is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue

---

13. That case is similar to the instant case in which Knight testified that this discharge occurred because:

Q. Go ahead and tell us.
A. We felt it was our feelings that in lieu of Stan's training and background that Stan wasn't providing the type of service that we were looking for. Stan relied heavily on Jack. Stan was lacking in technical ability in many of the systems that were redundant over and over again. The same types of systems would result in the same questions, which resulted in a lot of problems after the sale of the installation where the customer's expectations weren't met; putting the burden back on the service staff and my shoulders after the sale was made and we didn't want to deal with that any more.

and

Q. As I understand it when you made the decision to terminate Stan, you felt that he was really of no value to the company?
A. Yes, that's correct.

hardship on the employee and (3) is not injurious to the public.

■ If Zakinski had quit and gone to work for a competitor or had been fired for cause, the holdings in *Central, Inc.* and *American Rim & Brake* would control, but when he was fired through no fault of his own, the holding in *1st American Systems* should control. Although Central argues that the trial court will then have to resolve disputes as to whether an employee was fired for good cause, trial courts frequently have to make that kind of factual determination.

■ ■ We hold that if an employee voluntarily quits his employment or is fired for good cause, *Central, Inc.* and *American Rim & Brake* will control and no further showing of reasonableness will be necessary as long as the non-compete or non-disclosure agreement complies with SDCL 53-9-11. However, if an employee is fired for no fault of his own, the court needs to go further to determine whether the agreement is reasonable.[14] To do that the trial court must engage in a balancing test in which the court is obliged to consider the following:

> Ultimately, the task of determining reasonableness is one of balancing competing interests, for which there can be no mathematical formula.... Each case must be determined on its own particular facts, and it is impossible to lay down any general rule.
>
> * * * * * *
>
> Broadly speaking, reasonableness is a function of the extent of the restraint, including its territorial scope and duration, and the nature of the business or profession involved, including the employee's position and duties and the public's interests in the employee's being able to continue in that field.

*Unreasonableness of Covenant Not to Compete,* 20 Am.Jur. Proof of Facts 3d at 716.

■ In this case the trial court did not balance these competing interests. It found that Zakinski had access to some confidential information and received some training from Central. However, it did not determine what Central's interests were or how the restrictions protected those interests, nor did it balance those interests against the effect that enforcement of the agreement will have on Zakinski or the public.

### CONCLUSION

■ ■ The trial court's grant of an injunction restraining Zakinski from violating the confidentiality (non-disclosure) portion of the agreement is affirmed. However, the portion of the injunction restraining him from working for any of Central's competitors in South Dakota for a period of two years is reversed and remanded to the trial court to analyze and balance the competing interests of Central, Zakinski and the public to determine whether the non-compete portion of the agreement is reasonable.

■ MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

■ RUSCH, Circuit Judge, for KONENKAMP, J., disqualified.

---

14. Nothing in this decision should be construed as a change in South Dakota's employment at will rule. *Richardson v. East River Elec. Power Co-op.,* 531 N.W.2d 23, 26 (S.D.1995) (citing SDCL 60-4-4).