#28273-a-DG
**2018 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

FARM BUREAU LIFE INSURANCE
COMPANY and FARM BUREAU
PROPERTY & CASUALTY
INSURANCE COMPANY,                               Plaintiffs and Appellants,

v.

RYAN DOLLY,                                      Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MATTHEW M. BROWN
Judge

* * * *

CASSIDY M. STALLEY of
Lynn, Jackson, Shultz
  & Lebrun, P.C.
Rapid City, South Dakota            Attorneys for plaintiffs
                                    and appellants.


SARAH E. BARON HOUY
KELSEY B. PARKER of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota            Attorneys for defendant
                                    and appellee.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 8, 2018
OPINION FILED **03/21/18**

#28273

GILBERTSON, Chief Justice

[¶1.] Farm Bureau Life Insurance Co. and Farm Bureau Property and Casualty Insurance Co. appeal the circuit court's partial denial of their request for preliminary injunctive relief against their former agent Ryan Dolly. They argue the court erred by enjoining Dolly only from soliciting business from Farm Bureau's existing customers without also enjoining Dolly from selling to those customers. We affirm.

## Facts and Procedural History

[¶2.] On December 10, 2012, Dolly entered into two agency contracts with Farm Bureau Life Insurance Co. and Farm Bureau Property and Casualty Insurance Co. (collectively, "Farm Bureau"). Under the contracts, Dolly operated as a captive agent—an independent contractor limited to selling insurance and financial products produced or approved by Farm Bureau. Unlike an independent insurance agent, Dolly did not obtain ownership of renewals on the policies he sold; Farm Bureau retained ownership. Dolly's contracts with Farm Bureau were terminated on January 12, 2017, after Dolly notified Farm Bureau that he was leaving to work for a competing insurer, American National Insurance Co.

[¶3.] The contracts at issue contain provisions that expressly restrain Dolly's post-termination conduct. Paragraph 11 of the contracts states, in part:

> It is hereby understood and agreed that upon the termination of this . . . [c]ontract for any reason, [Dolly] will neither sell nor solicit, directly or indirectly, or initiate replacements or exchanges of any insurance or annuity product, with respect to any policyholder of [Farm Bureau], its subsidiaries or affiliates or any company with which [Farm Bureau] has a marketing agreement, within any counties in which [Dolly] sold or serviced any products pursuant to this [c]ontract. . . . This provision will

> be enforceable for a period of eighteen (18) months following the termination of this [c]ontract.

And paragraph 18 states, in part:

> In performing his . . . duties as an [a]gent, [Dolly] will have access to and receive certain confidential or proprietary information from or on behalf of [Farm Bureau] (hereinafter "Confidential Information"). [Dolly] shall take all reasonable steps necessary to protect the confidential and proprietary nature of all Confidential Information . . . . [Dolly] shall not directly or indirectly disclose or make available to any third party any Confidential Information. [Dolly] agrees not to appropriate any Confidential Information for his . . . own use either during the course of or subsequent to termination of this [c]ontract. Confidential Information shall include, but not be limited to, any information received by [Dolly] from or on behalf of [Farm Bureau], including but not limited to customer and consumer information.

Less than three months after leaving Farm Bureau, Dolly sold American National insurance policies to clients to whom he had previously sold Farm Bureau policies.

[¶4.]      On April 7, 2017, concluding that Dolly had breached paragraphs 11 and 18 of the agency contracts, Farm Bureau filed an action against Dolly seeking damages and injunctive relief. That same day, Farm Bureau also filed a motion requesting a temporary restraining order and a preliminary injunction. On April 11, the circuit court granted Farm Bureau's request for a temporary restraining order and enjoined Dolly from "selling or soliciting, or initiating replacements or exchange of any insurance or annuity product, directly or indirectly, to [Farm Bureau's] policyholders within the counties Dolly sold [Farm Bureau's] insurance products for a period of eighteen months from January 12, 2017."

[¶5.]      On April 18, 2017, the circuit court held an evidentiary hearing to consider Farm Bureau's request for a preliminary injunction. Dolly testified at the

hearing.  On cross-examination, he admitted to having direct contact with, and selling replacement policies to, Farm Bureau's existing customers:

> **[Farm Bureau's attorney]**:  Okay.  Since leaving Farm Bureau, you've been posting to Facebook, signing customers to American National, and you've had direct contact with Farm Bureau policyholders; right?
>
> **[Dolly's attorney]**:  I'm going to object.  It's compound.
>
> **[Circuit court]**:  Sustained.
>
> **[Farm Bureau's attorney]**:  You've texted, e-mailed, and contact—directly contacted Farm Bureau policyholders; right?
>
> **[Dolly's attorney]**:  I'm going to object to the extent the question is vague and doesn't seek to clarify who initiated the contact.
>
> **[Circuit court]**:  Well, she said you have.  Set a time frame.
>
> **[Farm Bureau's attorney]**:  Since leaving Farm Bureau.
>
> **[Dolly]**:  Yes.
>
> **[Farm Bureau's attorney]**:  And you've sold and initiated replacements of American National policies to Farm Bureau policyholders since you've left Farm Bureau; right?
>
> **[Dolly]**:  Yes.

On direct examination, Dolly clarified that while he sold American National policies to Farm Bureau's existing customers, he had not solicited those sales:

> **[Dolly's attorney]**:  You left Farm Bureau in January of 2017; right?
>
> **[Dolly]**:  Uh-huh.
>
> **[Dolly's attorney]**:  Okay.  Since that time have you reached out to any Farm Bureau customer and sought to persuade them to leave Farm Bureau?
>
> **[Dolly]**:  No.
>
> **[Dolly's attorney]**:  Any contact that you have had with an existing Farm Bureau policyholder, who has initiated that contact?
>
> **[Dolly]**:  The customer.

After considering the testimony and other evidence presented, the court readopted its earlier factual findings and legal conclusions but explicitly struck the word *selling* from its order. Thus, while the temporary restraining order prohibited Dolly from selling or soliciting to Farm Bureau's existing customers, the preliminary injunction prohibited Dolly only from soliciting to Farm Bureau's existing customers. In the court's view, the portions of the agency contracts that prohibited Dolly from selling to Farm Bureau's existing customers was an invalid restraint on trade under SDCL chapter 53-9.

[¶6.] Farm Bureau appeals, raising the following issue: Whether an agreement between an insurance company and its former captive agent that precludes the agent from soliciting or selling other insurance products to the company's existing customers for a period of 18 months is valid under SDCL chapter 53-9.

## Standard of Review

[¶7.] The central issue presented in this appeal is the interpretation of a statute. "Questions of statutory interpretation and application are reviewed under the de novo standard of review with no deference to the circuit court's decision." *Deadwood Stage Run, LLC v. S.D. Dep't of Revenue*, 2014 S.D. 90, ¶ 7, 857 N.W.2d 606, 609 (quoting *Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 7, 739 N.W.2d 475, 478).

## Analysis and Decision

[¶8.] Farm Bureau argues the circuit court erred by enjoining Dolly only from *soliciting* business from Farm Bureau's existing customers without also enjoining Dolly from *selling* to those customers. Since before statehood, the general

rule in South Dakota is that "[a]*ny* contract restraining exercise of a lawful profession, trade, or business is void to that extent, *except as provided by* §§ 53-9-9 to 53-9-12, inclusive." SDCL 53-9-8 (emphasis added).[1] In 2005, the Legislature enacted SDCL 53-9-12, which contains an exception to this general rule for contracts between an insurance company and "[a]ny independent contractor who is an insurance producer as defined in subdivision 58-1-2(16) and is a captive agent who is not an independent agent and who works exclusively for a single insurance company or an affiliated group of insurance companies[.]" Under this exception, the captive agent may agree

> (1) Not to engage directly or indirectly in the same business or profession as that of the insurer for any period not exceeding two years from the date of termination of the independent contractor's agreement with the insurer; and
>
> (2) Not to solicit existing customers of the insurer within a specified county, first or second class municipality, or other specified area for any period not exceeding two years from the date of termination of the agreement, if the insurer continues to carry on a like business within the specified area.

*Id.* Farm Bureau contends that the legislative history of SDCL 53-9-12 suggests that a captive agent and an insurance company may enter into an agreement prohibiting the agent from soliciting *or* selling (unsolicited) to existing customers. Farm Bureau also contends that a literal reading of SDCL 53-9-12 is absurd because it "nullifies" what Farm Bureau perceives to be the legislative intent.

[¶9.]        Farm Bureau's reliance on legislative history is misplaced. "This [C]ourt assumes that statutes mean what they say and that legislators have said

---

1.    This code provision dates back to Dakota Territory's civil code. *See* Dak. Rev. Codes, Civ. Code § 959 (1877).

what they meant." *In re Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D. 1984). "[R]esorting to legislative history is justified only when legislation is ambiguous . . . ." *Id.* "When interpreting a statute, we begin with the plain language and structure of the statute." *Magellan Pipeline Co. v. S.D. Dep't of Revenue & Reg.*, 2013 S.D. 68, ¶ 9, 837 N.W.2d 402, 404 (quoting *In re Pooled Advoc. Tr.*, 2012 S.D. 24, ¶ 32, 813 N.W.2d 130, 141). "When the language in a statute is clear, certain[,] and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Rowley v. S.D. Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 7, 826 N.W.2d 360, 363-64 (quoting *In re Estate of Hamilton*, 2012 S.D. 34, ¶ 7, 814 N.W.2d 141, 143). Thus, ambiguity is a prerequisite of construction. *People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722. Ambiguity "may exist where the literal meaning of a statute leads to an absurd or unreasonable conclusion[,]"*id.* (quoting *In re Sales Tax Refund Applications of Black Hills Power & Light Co.*, 298 N.W.2d 799, 803 (S.D. 1980)), or when a statute "is capable of being understood by reasonably well-informed persons in either of two or more senses[,]" *Kling v. Stern*, 2007 S.D. 51, ¶ 6, 733 N.W.2d 615, 617 (quoting *Petition of Famous Brands*, 347 N.W.2d at 886).

[¶10.] The circuit court's conclusion that SDCL 53-9-12 permits an agreement not to solicit—rather than not to sell to—an insurer's existing customers is the only reasonable interpretation of that statute. Under the plain language of SDCL 53-9-12(1), a captive agent may agree to abstain entirely from the insurance business. But when the agent does not agree to abstain entirely from the insurance

business—as is the case here—SDCL 53-9-12(2) permits the agent to agree "[n]ot to *solicit* existing customers of the insurer[.]" (Emphasis added.) The word *solicit* is not defined in SDCL Title 53, which addresses the topic of contracts, but it is defined in SDCL Title 58, which addresses the topic of insurance. Under Title 58, the word *solicit* is defined as "*attempting* to sell insurance or *asking* or *urging* a person to apply for a particular kind of insurance from a particular company[.]" SDCL 58-30-142(10) (emphasis added). The Legislature has declared that "[w]henever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." SDCL 2-14-4. No such contrary intention is apparent here. Thus, while SDCL 53-9-12(2) permits a captive agent to agree not to, e.g., ask or urge an insurance company's existing customers to purchase new policies from the agent, that statute contains no provision for permitting an agent who continues to sell insurance to agree not to sell policies to existing customers who—unsolicited—request such policies.

[¶11.] Even so, Farm Bureau contends the plain meaning of SDCL 53-9-12 is absurd. In Farm Bureau's view, that statute is meant to protect an insurance company from having a captive agent "resign and immediately start selling insurance products of a competitor to former customers[.]" Yet, permitting an agent to agree not to ask or urge an insurance company's existing customers to buy new policies *does* protect that company. An agent who does not actively seek out a company's existing customers to try to convince them to buy new policies will naturally draw less business away from that company than an agent who does.

While adding the words *or sell to* to SDCL 53-9-12 would broaden the protection available to an insurance company under that statute, this increased protection would be achieved by curtailing the options available to the company's existing customers. The plain language of SDCL 53-9-12, as discussed above, balances the interests of an insurance company with the consumer's interest in deciding whether he or she would rather purchase a new policy from a familiar agent or renew a familiar policy with a new agent. This balanced approach is not absurd simply because the Legislature could have broadened SDCL 53-9-12's exception to SDCL 53-9-8.[2]

---

2.  As does Farm Bureau, the special writing argues our reading of SDCL 53-9-12 is "absurd." *Infra* ¶ 21. The special writing reasons that because SDCL 53-9-12(1) permits a captive agent to agree not to *sell* insurance to *any* consumer, and because SDCL 53-9-12(2) permits the agent to agree not to *solicit* from only *some* consumers, this Court should infer that the Legislature intended to permit an agent to agree not to *sell* to only *some* consumers as well. *Infra* ¶ 22.

    But the special writing's view of SDCL 53-9-12 presents a scenario altogether different from those presented by the plain text of SDCL 53-9-12(1) and -12(2). Regardless of whether Dolly agreed to leave the insurance business altogether under SDCL 53-9-12(1) or whether he agreed only to refrain from soliciting business from previous customers under SDCL 53-9-12(2), in neither case would those customers be prohibited from buying insurance policies from American National. But under the special writing's view of SDCL 53-9-12, Dolly and Farm Bureau could essentially agree to prohibit Dolly's previous customers from entering into business transactions with American National. This Court has previously rejected agreements that attempt to limit a third party's power to contract. *See Commc'n Tech. Sys., Inc. v. Densmore*, 1998 S.D. 87, ¶¶ 11-20, 583 N.W.2d 125, 127-30.

    More importantly, the special writing's argument overlooks that SDCL 53-9-12 is an *exception* to SDCL 53-9-8's general prohibition against contracts that restrain trade. Thus, any expansion of SDCL 53-9-12 necessarily diminishes SDCL 53-9-8. As such, SDCL 53-9-12 "must be construed *narrowly* so as to promote the prohibition against contracts in restraint of trade." *Commc'n Tech. Sys.*, 1998 S.D. 87, ¶ 15, 583 N.W.2d at 128 (emphasis added) (quoting

    (continued . . .)

[¶12.]     Even if resorting to legislative history were appropriate, the history Farm Bureau relies on is not persuasive. To support its view of the Legislature's intent in passing SDCL 53-9-12, Farm Bureau primarily relies on statements made by lobbyists at a hearing before the South Dakota House of Representatives' Commerce Committee. Farm Bureau also quotes the commentary of a single legislator. This Court has "consistently held that statements of individual legislators are not persuasive to establish the intent of the Legislature for a particular statute. There are 105 legislators and there may be 105 different[,] individual reasons they vote for or against a bill." *Benson v. State*, 2006 S.D. 8, ¶ 72 n.15, 710 N.W.2d 131, 159 n.15 (citation omitted). And while a lobbyist's statements may be evidence of a statute's legislative history, they are not evidence of the Legislature's intent. As noted above, this Court's rule of statutory interpretation "is that the Legislature said what it meant and meant what it said *from the text of the statute*." *Id.* (emphasis added).

## Conclusion

[¶13.]     In light of the foregoing, the plain meaning of SDCL 53-9-12 supports the circuit court's decision to adhere to that statute's language. And even if SDCL 53-9-12 were ambiguous, Farm Bureau's legislative-history analysis is not persuasive. The general rule against contracts in restraint of a lawful profession,

---

(. . . continued)
> *Cent. Monitoring Serv. v. Zakinski*, 1996 S.D. 116, ¶ 9, 553 N.W.2d 513, 516). The special writing's suggestion that this Court should infer an exception not reflected in the plain text of SDCL 53-9-12 is not a narrow construction of that statute. If SDCL 53-9-12 is to be expanded, it should be done legislatively and not judicially.

trade, or business is a legislative expression of public policy, *Kidder Equity Exch. v. Norman*, 42 S.D. 229, 232, 173 N.W. 728, 729 (1919), and exceptions like SDCL 53-9-12 "must be construed narrowly so as to promote the prohibition against contracts in restraint of trade[,]" *Commc'n Tech. Sys., Inc. v. Densmore*, 1998 S.D. 87, ¶ 15, 583 N.W.2d 125, 128 (quoting *Cent. Monitoring Serv. v. Zakinski*, 1996 S.D. 116, ¶ 9, 553 N.W.2d 513, 516). Therefore, we affirm.

[¶14.]      ZINTER, SEVERSON, and KERN, Justices, concur.

[¶15.]      JENSEN, Justice, concurs in result.


JENSEN, Justice (concurring in result).

[¶16.]      I concur in result but disagree with the majority's statement that "[t]he circuit court's conclusion that SDCL 53-9-12 permits an agreement not to solicit—rather than not to sell to—an insurer's existing customers is the only reasonable interpretation of that statute." *Supra* ¶ 10.

[¶17.]      SDCL 53-9-12 is one of the statutorily created exceptions to SDCL 53-9-8, which declares contracts that restrain trade to be void against public policy. SDCL 53-9-12 authorizes contracts between an insurer and an independent, captive agent that restrain the agent. Under the statute, a captive agent may agree:

> (1)      Not to engage directly or indirectly in the same business or profession as that of the insurer for any period not exceeding two years from the date of termination of the independent contractor's agreement with the insurer; and
>
> (2)      Not to solicit existing customers of the insurer within a specified county, first or second class municipality, or other specified area for any period not exceeding two years from the date of termination of the agreement, if the insurer continues to carry on a like business within the specified area.

SDCL 53-9-12.

[¶18.]     Subsection (1) authorizes a noncompete agreement that prohibits a captive agent from engaging directly or indirectly in the same business as the insurer for a period of two years from the date of termination of the captive agent's employment with the insurance company.  Subsection (2) authorizes a nonsolicitation agreement that prohibits an agent from soliciting customers of the insurance company for a period of two years within a defined geographical area.  The two subsections in SDCL 53-9-12 are separated by the conjunction "and," so that an insurance company and captive agent may include both a noncompete and nonsolicitation provision in an agreement.

[¶19.]     I agree with the majority that subsection (2) sanctions nonsolicitation agreements, and that an agreement preventing a former captive agent from *selling* to a customer is not included in the term *solicit* under subsection (2).  However, I part company with the majority's reading of subsection (1).  The majority acknowledges under subsection (1) that a captive agent "may agree to abstain entirely from the insurance business[.]"  *Supra* ¶ 10.  But the majority then concludes that "when the agent does not agree to abstain entirely from the insurance business," SDCL 53-9-12 limits the insurance company to the nonsolicitation language of SDCL 53-9-12(2).  *Supra* ¶ 10.  This incorrectly suggests an *either/or* reading of the two subsections and misreads subsection (1) of the statute.

[¶20.]     "We begin our interpretation of a statute with an analysis of its plain language and structure." *Puetz Corp. v. S.D. Dep't of Revenue*, 2015 S.D. 82, ¶ 16, 871 N.W.2d 632, 637.  The language of SDCL 53-9-12(1) provides that an insurer

and a captive agent may agree that the agent will not "engage directly or indirectly in the *same business* or profession as that of the insurer." (Emphasis added.) The statutory exception does not define or further modify the language "same business or profession." I agree with the majority that the language of the statute is broad enough to allow a noncompete agreement that completely forecloses a captive agent from engaging in the insurance industry to whatever extent that is the *same business* as the insurer. However, that same language also encompasses a noncompete agreement that restricts an agent from selling insurance products to policyholders of the insurer since that is the *same business* of the insurer.

[¶21.] The majority's reading of SDCL 53-9-12(1) suggests the Legislature only intended to authorize a noncompete agreement that mimics the full breadth of the exception created in the statute. Adopting this reading of the statute leads to an absurd conclusion. The majority's reading suggests that the Legislature intended to create a broad exception to the public policy against restraints on trade for a noncompete agreement that completely prevents a captive agent from engaging in the business of the insurer, including *selling insurance to the insurer's policyholders*. But the majority's reading also suggests that the Legislature did not intend to authorize a more narrowly tailored noncompete agreement that only restricts the agent from *selling insurance to the insurer's policyholders*. Such a narrower noncompete agreement falls well within the breadth of the exception created by the Legislature in SDCL 53-9-12(1).[3] When construing statutes, we

---

3. The majority states that its interpretation is a "balanced approach [that] is not absurd simply because the Legislature could have broadened SDCL 53-9-

(continued . . .)

"presume[] that the legislature did not intend an absurd or unreasonable result." *Argus Leader Media v. Hogstad*, 2017 S.D. 57, ¶ 9, 902 N.W.2d 778, 782 (quoting *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885). This Court has stated that "ambiguity is a condition of construction, and may exist where the literal meaning of a statute leads to an absurd or unreasonable conclusion." *People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722 (quoting *In re Sales Tax Refund Applications of Black Hills Power & Light Co.*, 298 N.W.2d 799, 803 (S.D. 1980)).

[¶22.] I submit that a proper reading of SDCL 53-9-12 harmonizes both subsections together. An insurance company and captive agent may agree to both a noncompete *and* a nonsolicitation agreement that is no broader than the exception created in each subsection of the statute. If the insurer determines that it adequately protects itself to limit the definition of *business* in the noncompete agreement to restricting the agent from *selling insurance to its policyholders*, that is well within the parameters of the exception set by the legislature and is not void under SDCL 53-9-8. This reading is consistent with the plain language of the statute and this Court's requirement that the statutory exceptions to restraints on trade "must be construed narrowly so as to promote the prohibition against

---

(. . . continued)

12's exception to SDCL 53-9-8." *Supra* ¶ 11. This statement highlights the focus of this special writing: the Legislature did, in fact, create a broad exception in SDCL 53-9-12 by sanctioning a noncompete agreement that restricts a captive agent from engaging in the *same business* as the insurer. As long as the noncompete agreement only restricts the agent from engaging in the *same business* as the insurer, such as selling insurance, the agreement is not void under the broad exception in SDCL 53-9-12.

contracts in restraint of trade." *Commc'n Tech. Sys., Inc. v. Densmore,* 1998 S.D. 87, ¶ 15, 583 N.W.2d 125, 128 (quoting *Cent. Monitoring Serv., Inc. v. Zakinski,* 1996 S.D. 116, ¶ 9, 553 N.W.2d 513, 516).  This reading also accomplishes the Legislature's apparent intent in SDCL 53-9-12 to protect the business interests of the insurer.  It also furthers the Legislature's stated public policy against restraints on trade in SDCL 53-9-8 by lessening the noncompete agreement's burden on the agent.

[¶23.]     Although I believe the agreement here is not a restraint on trade under the legislatively created exception in SDCL 53-9-12(1), I concur in result because Farm Bureau claimed before the circuit court that the agreement was solely a nonsolicitation agreement under SDCL 53-9-12(2).  Farm Bureau's senior in-house counsel testified as follows at the hearing on the preliminary injunction:

> **[Dolly's counsel]:** You're referring to 53-9-12?
>
> **[In-house counsel]:** Yes.  If that's the one with the two subsections.
>
> **[Dolly's counsel]:** Okay.
>
> **[In-house counsel]:** In the first subsection of that, it allows for a two-year non-compete, which says we would be within our rights, written into our contract that Mr. Dolly be not allowed to sell insurance for two years.
>
> **[Dolly's counsel]:** And you didn't do that, did you?
>
> **[In-house counsel]:** No.  But we do ask that he not solicit his contract, his former agents, for 18 months, which seems to me to be a much more reasonable provision than the first subsection of that statute.

[¶24.]     As a result, the circuit court focused only on SDCL 53-9-12(2) in determining whether the contractual provision that prohibited Dolly from selling insurance to any Farm Bureau policyholders was void as a restraint on trade.  The

court stated, "I find that under the statutes and the plain reading of the statutes in 53-9-8, which is the statute in which essentially voids restraints on trade and then gives exceptions, one of those being 53-9-12 and specifically 53-9-12 Subsection 2, only exempts solicitation and not sales." Farm Bureau is critical of the circuit court for failing to address subsection (1) of SDCL 53-9-12 in its ruling. But Farm Bureau affirmatively claimed before the circuit court that it did not ask Dolly to sign a noncompete agreement, but only a nonsolicitation agreement under subsection (2). When a party fails to argue or object to an issue below, thereby denying the circuit court an opportunity to correct its mistakes, the party waives its right to argue the issue on appeal. *See Veith v. O'Brien*, 2007 S.D. 88, ¶ 35, 739 N.W.2d 15, 26. Because Farm Bureau failed to assert below that the agreement with Dolly was also a valid noncompete agreement under SDCL 53-9-12(1), I concur in result with the majority opinion.