#28916-a-JMK & PJD
**2020 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,
acting through the Attorney General,                    Petitioner and Appellee,

v.

BUFFALO CHIP, SOUTH DAKOTA,                    Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GORDON SWANSON
Retired Judge

\* \* \* \*

JAMES E. MOORE of
Woods Fuller Shultz & Smith, P.C.
Sioux Falls, South Dakota                    Attorneys for petitioner and
                                             appellee.


JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise
    Sauck & Hieb, LLP
Aberdeen, South Dakota

JOHN STANTON DORSEY
KIMBERLY PEHRSON
KENT R. HAGG of
Whiting, Hagg, Hagg,
    Dorsey & Hagg, LLP
Rapid City, South Dakota                    Attorneys for respondent and
                                             appellant.

\* \* \* \*

ARGUED
SEPTEMBER 30, 2019
OPINION FILED **11/10/20**

#28916

KERN, Justice and DEVANEY, Justice

**[¶1.]** **Justice Kern delivers the majority opinion of the Court as to Issue I. Justice DeVaney delivers the majority opinion of the Court as to Issue II.**

**[¶2.]** **KERN, Justice, writing for the Court as to Issue I.**

[¶3.] Buffalo Chip appeals an order of the circuit court dissolving its municipal incorporation, asserting that the State lacks authority to petition the court for such relief. Buffalo Chip also contends the circuit court erred in holding that it failed to satisfy the residency requirements in SDCL 9-3-1. We affirm.

## Facts and Procedural History

[¶4.] At the heart of this case is the validity of Buffalo Chip's status as a newly incorporated municipality in Meade County, South Dakota. The Buffalo Chip is a campground just outside of Sturgis, South Dakota, home of the famous Sturgis Motorcycle Rally. The Rally draws hundreds of thousands of motorcycle enthusiasts to Sturgis each year and is held during the first full week of August.

[¶5.] The controversy giving rise to this case began in February 2015, when area residents petitioned the Meade County Board of County Commissioners (the Board) for incorporation of the Buffalo Chip campground as a city. The Board approved an amended petition on February 27, 2015. At the time, SDCL 9-3-1 provided that: "No municipality shall be incorporated which contains less than one hundred legal residents or less than thirty voters."[1] After holding a hearing and considering testimony, the Board concluded that the area of incorporation had more

---

1. In 2016, the Legislature amended SDCL 9-3-1.

-1-

than thirty registered voters and that more than a quarter of the voters had signed the amended petition as required by SDCL 9-3-5. The Board, believing SDCL 9-3-1 had been satisfied, approved the incorporation of Buffalo Chip City. It scheduled an election for May 7, 2015, so the voters in the proposed area could approve or reject the Board's decision. On March 31, 2015, several Meade County residents and the City of Sturgis appealed the Board's decision under SDCL 7-8-27, and Buffalo Chip intervened. The circuit court denied the City of Sturgis's motion to stay the election, so it proceeded as scheduled. The vote was in favor of Buffalo Chip, and, accordingly, on May 20, 2015, it filed its articles of municipal incorporation with the Secretary of State. At the time of incorporation, Buffalo Chip did not have one hundred legal residents, but it did have more than thirty registered voters.

[¶6.] After more than a year of litigation, the circuit court declared the Board's decision, ordering the incorporation of Buffalo Chip (with the assent of the qualified voters), a legal nullity due to deficiencies in the petitioners' filings and the Board's procedural process. The court ordered that any and all actions taken by Buffalo Chip be "void ab initio." Buffalo Chip and the Board appealed the circuit court's ruling to this Court. *See Lippold v. Meade Cnty. Bd. of Comm'rs*, 2018 S.D. 7, 906 N.W.2d 917.

[¶7.] In *Lippold*, we reversed and vacated the circuit court's judgment, holding that Sturgis and the other petitioners lacked standing to challenge Buffalo Chip's incorporation. *Id.* ¶ 31, 906 N.W.2d at 926. We held that pursuant to SDCL

9-3-20, only the State of South Dakota, or someone acting on its behalf, could challenge the incorporation of a city that is already acting as a municipality.[2]

[¶8.]    On March 14, 2018, the State petitioned this Court, requesting permission to commence an action in the nature of quo warranto and asking this Court to exercise original jurisdiction over the proceedings. We denied the request on May 10, 2018, with leave to file in circuit court.

[¶9.]    On May 29, 2018, the State filed a petition for, or in the nature of, a writ of quo warranto with the circuit court seeking a judgment under SDCL chapter 21-28 declaring that Buffalo Chip did not lawfully incorporate as a municipality, and should, therefore, be excluded from its corporate rights, privileges, and franchise, and be dissolved as a municipal corporation.[3] The State asserted that SDCL 21-28-2(3) authorizes it "to bring an equitable action against any association or number of persons acting as a corporation without being duly incorporated."[4] As

---

2.    A more detailed rendition of the facts is set forth in *Lippold*, 2018 S.D. 7, ¶ 31, 906 N.W.2d at 926, which this Court issued on January 24, 2018.

3.    "A writ of quo warranto is an ancient common-law writ that gave the king an action against a person who claimed or usurped any office, franchise, or liberty[.]" 17 McQuillin Mun. Corp. § 50:6 (3d ed. 2019). "An action in quo warranto seeks to prevent the exercise of unlawfully asserted authority." *Id.*

      "It is an established rule, frequently applied, that, if public interests are involved, the legal existence of a municipal corporation may be questioned and determined in quo warranto proceedings." *Id.* § 50:9. "Quo warranto will lie against a municipal corporation where . . . it does not meet the statutory requirements." *Id.*

4.    SDCL 21-28-2 provides that:

            An action may be brought by any state's attorney in the name of the [S]tate, upon his own information or upon the complaint of a

(continued . . .)

#28916

additional authority for its right to proceed, the State cited SDCL 9-3-20, which permits the State to inquire into the "regularity of the organization of any acting municipality[.]"

[¶10.] Buffalo Chip moved to dismiss the lawsuit, contending that SDCL 21-28-12 expressly forbids the State from commencing an action to vacate an existing municipal corporation. That statute provides that "[a]n action may be brought . . . for the purpose of vacating the charter or articles of incorporation, or for annulling the existence of corporations *other than municipal*[.]" SDCL 21-28-12 (emphasis added). The circuit court disagreed that SDCL 21-28-12 applied and denied Buffalo Chip's motion to dismiss, holding that the State qualifies as a person with a "special interest in the action" under SDCL 21-28-2(3) and also has authority under SDCL 9-3-20 as the only entity that may inquire into the regularity of an acting municipality's organization.

[¶11.] In January 2019, the parties filed cross-motions for summary judgment and included in their submissions a stipulated statement of material

_____

(. . . continued)
> private party, or an action may be brought by any person who has a special interest in the action, on leave granted by the circuit court or judge thereof, against the party offending in the following cases:
>
> (1) When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state;
> (2) When any public officer, civil or military, shall have done or suffered an act which, by the provisions of law, shall make a forfeiture of his office;
> (3) When any association or number of persons shall act within this state as a corporation, without being duly incorporated.

-4-

facts. Buffalo Chip again challenged the State's authority to proceed, arguing that SDCL 9-3-20, while permitting the State to inquire into the regularity of an existing municipality, did not authorize it to take action once the Board approved the municipality's incorporation. The parties also debated the proper interpretation of SDCL 9-3-1, the statute setting certain parameters for incorporation. The State argued Buffalo Chip needed both one hundred legal residents and thirty voters to satisfy SDCL 9-3-1. Buffalo Chip disagreed, arguing that SDCL 9-3-1 required either one hundred legal residents or thirty voters but not both.

[¶12.] The circuit court granted summary judgment to the State, concluding that the dictates of common sense and the plain language of SDCL 9-3-1 require municipalities to have at least one hundred residents and thirty registered voters in order to lawfully incorporate. A contrary interpretation, according to the circuit court, could lead to the absurd result that a municipality could be incorporated if it had no residents but had thirty voters. The court issued a judgment of dissolution, declaring that Buffalo Chip was not a lawfully incorporated municipality and ordered that Buffalo Chip be precluded from "[e]xercising its corporate rights, privileges, and franchises." The court also ordered that the judgment be filed and recorded in the offices of the Secretary of State of South Dakota and the Register of Deeds of Meade County. Buffalo Chip appeals the circuit court's judgment of dissolution, raising the following issues:

> I. Whether the circuit court erred by allowing the State to bring this action against Buffalo Chip.
>
> II. Whether the circuit court erred in its interpretation of SDCL 9-3-1.

## Analysis and Decision

[¶13.]    Questions of statutory interpretation are reviewed de novo.  *Upell v. Dewey Cnty. Comm'n*, 2016 S.D. 42, ¶ 8, 880 N.W.2d 69, 71.  Because there are no factual disputes in this case, summary judgment will be affirmed if the circuit court correctly interpreted and applied the law.  *De Smet Ins. Co. of South Dakota v. Pourier*, 2011 S.D. 47, ¶ 4 n.1, 802 N.W.2d 447, 448 n.1.

### I.    Whether the circuit court erred by allowing the State to bring this action against Buffalo Chip.

[¶14.]    Buffalo Chip asserts the circuit court erred in failing to dismiss the State's action because the "Legislature specifically carved out the annulment of the existence of municipal corporations" in SDCL 21-28-12, regardless of the State's authority under SDCL 21-28-2(3) to institute an action against an association or number of persons acting as a corporation.  It further contends that SDCL 21-28-12 applies here because SDCL 21-28-2 merely identifies *who* is entitled to bring a quo warranto action.  Buffalo Chip asserts that "who" may bring an action is not the issue; rather, the issue is "[w]hether chapter 21-28 authorizes any action to vacate the articles of incorporation and annul or dissolve the existence of a municipal corporation."

[¶15.]    In response, the State asserts that it has both statutory authority (via SDCL 21-28-2(3) and SDCL 9-3-20) and common law authority (via an action in the nature of a writ of quo warranto) to institute this direct attack on Buffalo Chip's incorporation.  It further asserts that SDCL 21-28-12 does not apply to bar the State's action because the State did not bring suit under that statute and because

Buffalo Chip's argument in reliance on this statute assumes that it incorporated in accordance with all applicable laws.

[¶16.] This Court has not before examined the State's authority to institute an action against a municipal corporation under SDCL chapter 21-28.[5] However, in a case decided over a century ago, this Court acknowledged the State's authority to institute an action challenging the right or standing of domestic or foreign corporations to transact business in this state. *Wright v. Lee*, 4 S.D. 237, 55 N.W. 931, 933–34 (1893). The Court explained that the State's authority arises from "its sovereign capacity, as the conservator of the rights and best interests of its citizens." *Id.* at 933. The Court further concluded that the State's right to institute a civil action under the predecessor statutes, now found in SDCL chapter 21-28, is cumulative to the State's right to proceed against the corporation at common law for a writ of quo warranto. *Id.* at 934 (holding that the enactments are not exclusive, but cumulative, to the common law writs).

[¶17.] Although *Wright* was decided in 1893, it appears to be without question, in many jurisdictions, that a state has the authority to challenge the

---

5. In *Lippold*, we held that only the State has standing to challenge the incorporation of a municipality, relying on SDCL 9-3-20. 2018 S.D. 7, ¶ 19, 906 N.W.2d at 922. Neither the Court nor the parties addressed or examined SDCL chapter 21-28 in *Lippold*. Much of our discussion in the case at hand relates to SDCL 21-28-2(3), a statute which authorizes both the State and persons with a special interest (upon leave of the court) to bring an action against an association or number of persons acting as a corporation without being duly incorporated. However, according to SDCL 9-3-20, a statute within the chapter specifically governing the incorporation of municipalities, only the State may bring such an action when the inquiry pertains to an acting municipality.

existence of a corporation, including the creation of a municipal corporation.[6] *See* 1 Eugene McQuillin, *The Law of Municipal Corporations* § 3:107, § 3:112 (3d ed.) (Westlaw database updated August 2020); *see also* 65 Am. Jur. 2d Quo Warranto § 45 (updated August 2020) ("Municipal corporations are delegated agencies of the state government and their existence . . . should be open to question only in a direct proceeding in the interest of the public.").

[¶18.]	Nevertheless, Buffalo Chip argues that quo warranto cannot be used under the circumstances here, because to do so ignores that SDCL 21-28-12 "plainly prohibits" an action challenging the existence of a municipality once that municipality has filed its articles of incorporation with the Secretary of State.[7]

---

6.	*See, e.g.*, *United States v. Heyward*, 98 F.2d 433, 434 (5th Cir. 1938) (observing that "an enquiry into the very existence of the municipality is in general reserved to the State itself in a direct proceeding by quo warranto"); *West v. Town of Lake Placid*, 120 So. 361, 365 (Fla. 1929) (noting that the existence of a de facto corporation "can be challenged only by the state in a direct proceeding, such as quo warranto, instituted through its Attorney General, or through such other person as may be lawfully authorized or entitled, by reason of the nature of the rights involved, to invoke the remedy"); *Spiking Sch. Dist. No. 71, DeKalb Cnty. v. Purported "Enlarged Sch. Dist. R–11, DeKalb Cnty., Mo."*, 245 S.W.2d 13, 21 (Mo. 1952) (holding that the existence of a municipal corporation must be challenged by the state); *Peek v. Harvey*, 599 S.W.2d 674, 676 (Civ. Ct. App. Tex. 1980) ("The law in Texas is clear that a quo warranto proceeding, instituted and conducted in the name of the State of Texas, is the only proper method of making a direct attack upon a voidable municipal corporation existing de facto or under color of law.").

7.	According to Buffalo Chip, SDCL 9-3-20 would still serve a purpose even if its applicability is limited to municipalities that have failed to file articles of incorporation. Buffalo Chip highlights that there are a number of municipalities across South Dakota that have never incorporated by taking the step of filing articles of incorporation with the Secretary of State's Office, and thus the State may inquire into their regularity via SDCL 9-3-20.

(continued . . .)

Buffalo Chip notes that—unlike SDCL 21-28-12—SDCL 9-3-20 refers to an *acting* municipality, and SDCL 21-28-2(3) refers to an association of persons who *act* as a corporation without being duly incorporated. In its view, the only way to give effect to all three statutes is to conclude that the term *acting* denotes that the municipality has not completed all the steps to incorporate, while the reference in SDCL 21-28-12 to "municipal" without the word "acting" means that the State may not institute an action to annul the existence of a municipality when the municipality has *actually* incorporated. Buffalo Chip then contends that because it took "the step of filing articles of incorporation with the Secretary of State's office," it has *actually* incorporated and SDCL 21-28-12 therefore governs and bars the remedy being sought here by the State.

[¶19.] From our review of SDCL chapter 21-28 as a whole, we conclude that SDCL 21-28-12 and SDCL 21-28-2(3) serve different purposes. SDCL 21-28-2(3) authorizes an action in a scenario where an association of persons acts as a corporation *without being lawfully incorporated*. In contrast, the remedies obtained under SDCL 21-28-12 are premised on the existence of a *lawful* domestic or foreign corporation, and the offenses listed therein relate to the surrender of the rights and privileges of a corporation that acts in a manner that runs afoul of or fails to act in

---

(. . . continued)

However, Buffalo Chip recognizes that "these municipalities may be unassailable due to their grand-fathered status" under SDCL 9-3-21. That statute provides: "In all cases where application has, before July 1, 1939, been made for the organization of a municipality and such municipality has assumed to act as a municipality, the organization thereof is hereby in all things legalized, ratified, and declared valid, notwithstanding any errors, omissions, or informalities therein."

accordance with the corporation's charter, franchise, or privileges bestowed upon it by the state. While it may appear at first glance that an association acting "without being duly incorporated" (as referenced in SDCL 21-28-2(3)) implicates a similar premise as a corporation that "offend[s] against any of the laws creating it" (as referenced in SDCL 21-28-12(1)), a historical analysis of the underpinnings of SDCL chapter 21-28 and identical laws enacted in other states suggest otherwise.

[¶20.]     In *State v. Central Lumber Co.*, the Court described the predecessor of SDCL 21-28-12 (containing the same language as the current statute) in a manner that sheds light on what is meant by the phrase "offend against any of the laws creating" a corporation. 24 S.D. 136, 123 N.W. 504, 513–14 (1909) (referring to S.D. Rev. Code of Civil Procedure 571 (1903)). The Court explained that the statute is consistent with the common law recognition that a state's attorney may bring an action to annul the charter of corporations when such corporations "forfeit their charters by the misuser thereof." *Id.* The Court explained that "[a]t the *creation* of every corporation, in consideration of the rights and powers given to it by the state, there is the implied covenant or agreement, on the part of such corporation, that it will use the powers given it to the benefit of the public; and, as an incident to such implied agreement, there is attached the condition that, in case of a serious breach of such implied covenant and agreement, the corporation shall forfeit its right to exist, it having ceased to be of public benefit." *Id.* at 513 (emphasis added).

[¶21.]     Similarly, in *Dudley v. Dakota Hot Springs Co.*, the Court recognized that under the common law, the state may institute an action against both lawfully

existing corporations and corporations that have failed to lawfully incorporate in the first instance. 11 S.D. 559, 79 N.W. 839 (1899). The Court explained,

> There are two modes of proceeding judicially to ascertain and enforce the forfeiture of a charter for default or abuse of power. The one is by scire facias, and that process is proper where there is a legal existing body, capable of acting, but who have abused their power. The other mode is by information in the nature of a quo warranto, which is in form a criminal, and in its nature a civil, remedy; and that proceeding applies where there is a body corporate de facto only, but who take upon themselves to act, though, from some defect in their constitution, they cannot legally exercise their powers.

*Id.* at 839 (quoting 2 James Kent, Commentaries on American Law 313 (George Comstock ed., 11th ed. 1866)).[8] Other courts have concluded the same, and as one justice, interpreting the differences between statutes identical to those being compared here, explained: "In other words, section 5453 [the equivalent to SDCL 21-28-2(3)] is to prevent action by a person or corporation not lawfully authorized to act; while section 5450 [the equivalent to SDCL 21-28-12] is to punish a corporation which is authorized to act, for its failure to act, or for the doing of the act improperly, and to prevent it from further exercising rights which it possesses." *State v. Birmingham Waterworks Co.*, 64 So. 23, 34 (Ala. 1913) (Mayfield, J., dissenting); *accord State v. City of Gadsen*, 106 So. 229, 229–30 (Ala. 1925).

[¶22.]        While we agree that SDCL 21-28-2(3) and SDCL 21-28-12 serve different purposes, we disagree with Buffalo Chip's argument that SDCL 21-28-12, which bars a suit seeking to annul the existence of a municipality that has *actually*

---

8.    Notably, SDCL 21-28-1 provides that "[t]he remedies formerly attained by a writ of scire facias, writ of quo warranto, and proceedings by information in the nature of quo warranto, may be obtained by civil actions under the provisions of this chapter."

(i.e., duly) incorporated, is applicable here. It is important to consider the nature of the State's action and the remedy the circuit court ordered. The State did not institute suit against Buffalo Chip under SDCL 21-28-12, alleging that Buffalo Chip abused its powers or surrendered its charter as a legally existing corporation. *See Dudley*, 11 S.D. at __, 79 N.W. at 839. Rather, the State proceeded in the nature of quo warranto under SDCL 21-28-2(3), seeking to prevent Buffalo Chip from further acting as a municipal corporation because Buffalo Chip did *not* lawfully incorporate in the first instance. *See* 17 Eugene McQuillin *The Law of Municipal Corporations* § 50:6 (3d ed.) (Westlaw database updated August 2020) (discussing that the common law writ of quo warranto "seeks to prevent the exercise of unlawfully asserted authority"); *Dudley*, 11 S.D. at __, 79 N.W. at 839 (explaining that quo warranto applies whenever a body acts as a corporation but is not legally authorized to exercise its powers).

[¶23.] Moreover, the circuit court's judgment did not abolish Buffalo Chip as if it never existed as an acting (*de facto*) municipality.[9] Rather, in order to prevent

---

9. Buffalo Chip contends that it is a *de jure* rather than a *de facto* corporation. In *Lippold*, we explained the difference between a *de jure* and *de facto* corporation.

> A *de facto corporation* is one so defectively created as not to be a de jure corporation, but nevertheless the result of a bona fide attempt to incorporate under existing statutory authority, coupled with the exercise of corporate powers, and recognized by the courts as such on the ground of public policy in all proceedings except a direct attack by the state questioning its corporate existence. A *de jure* corporation stands in contrast to a *de facto* corporation and is a corporation formed in accordance with all applicable laws and recognized as a corporation for liability purposes.

(continued . . .)

a further usurpation of authority, which Buffalo Chip did not lawfully obtain, the court ordered that Buffalo Chip, to the extent that it existed as a *de facto* corporation, be precluded from exercising corporate rights, privileges, and franchises, be dissolved, and that a copy of the judgment be filed and recorded with the Secretary of State and Register of Deeds in Meade County.[10] The circuit court's authority to issue such orders derives from SDCL chapter 21-28, SDCL 9-3-20, and the common law.

[¶24.]     Buffalo Chip alternatively argues that regardless of the State's authority to institute an action challenging whether a municipality was lawfully incorporated, the State could only bring such an action *before* it accepted Buffalo Chip as a municipal corporation by filing its articles of incorporation.[11] Relying on

---

(. . . continued)

2018 S.D. 7, ¶ 21, 906 N.W.2d at 922–23. We then determined that Buffalo Chip became an acting municipality and at least a *de facto* corporation after the voters assented to Buffalo Chip's incorporation, but we concluded that the State may nevertheless challenge its validity. *Id.* ¶ 25, 906 N.W.2d at 924.

10. As authorities have explained, the court's judgment prospectively "operates as a declaration of juridical nullity as to the entity's purported rights, powers, privileges and immunities." 4 Local Government Law § 29:3. *See also People v. Sandman*, 170 N.E. 211, 212 (Ill. 1930) (the judgment effects "an absolute revocation of all power and authority on the part of others to act in its name or behalf"); 17 McQuillin, *supra* § 50:21.

11. Buffalo Chip also argues that the State's action is an impermissible collateral attack. To support its position, Buffalo Chip points to *Merchs. Nat'l Bank v. McKinney*, 2 S.D. 106, 48 N.W. 841 (1891). *McKinney*, however, is distinguishable. In *McKinney*, the case concerned whether the acts of a *de facto* corporation are valid as to third parties. The Court held that although Douglas County did not meet the requirements for incorporation, it became, under the territorial code, a "de facto" corporation, such that the *acts* of the corporation—the warrants—were enforceable against the public and private individuals. *Id.* at 845. The Court further held that the legality of the

(continued . . .)

the doctrines of laches, estoppel, and waiver, Buffalo Chip asserts that, because "the State would have known from the census Buffalo Chip submitted in 2015 that it did not have one hundred (100) residents," it should have challenged its existence when Buffalo Chip sought to incorporate.[12]  As support, Buffalo Chip cites this Court's decisions applying general waiver law.  *See, e.g.*, *Phipps v. First Fed. Sav. & Loan Ass'n*, 438 N.W.2d 814, 817 (S.D. 1989).

[¶25.]	However, Buffalo Chip has not cited any provision in SDCL chapter 21-28 or under the common law requiring that the State institute an action in the nature of quo warranto *prior* to a municipality's purported incorporation.  Moreover, SDCL 9-3-20 broadly gives the State authority to inquire into "[t]he regularity of the organization of any acting municipality[.]"  Finally, the Secretary of State's filing of the certified copy of the canvass of the votes in favor of Buffalo Chip's incorporation was a ministerial act that cannot operate as a waiver of the State's authority, in its sovereign capacity under SDCL 21-28-2(3) and SDCL 9-3-20, to

---

(. . . continued)
	incorporation could not be raised in a collateral proceeding challenging the *acts of the officer*.  *Id.*  Here, in contrast, the State instituted a direct action against Buffalo Chip under SDCL 21-28-2(3) challenging the propriety of its incorporation.

12.	Buffalo Chip has not identified a document submitted to the Secretary of State that would have contained this information.  The Articles of Incorporation and attached Resolution by the Meade County Commission refer to a census having been taken, but neither contains the actual census as an attachment or identifies the number of legal residents in the proposed municipality.

challenge whether the incorporation was lawful.[13] Notably, other courts have observed that equitable defenses such as estoppel, waiver, and laches are generally inapplicable to prevent the State's action when, as here, the State is acting in its sovereign capacity to enforce a governmental right.[14] *See, e.g., People v. Gary*, 63 N.E. 749, 755 (Ill. 1902) (applying the general premise that neither lapse of time nor estoppel prevents the government's suit against the public corporation); *United States v. Kirkpatrick*, 22 U.S. 720, 735, 9 Wheat 720, 6 L. Ed. 199 (1824) ("The general principle is, that laches is not imputable to the Government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy."). We therefore conclude that the circuit court properly allowed the State to institute this action against Buffalo Chip under SDCL 21-28-2(3) and SDCL 9-3-20.

---

13. Under SDCL 9-3-14, "the register of deeds shall record, and shall also cause a like certificate [of the canvass of the votes showing the result of the election] to be filed in the Office of the Secretary of State, who *shall file the same* and keep a registry of the municipalities so organized." (Emphasis added.)

14. There are noted exceptions to this general premise, for example, when "the law, after long continued use of [the municipal's] corporate powers, and the public acquiescence, will indulge in presumptions in favor of their legal existence." *People v. Bd. of Ed. Of Cmty. Unit Sch. Dist. No. 4*, 120 N.E.2d 887, 891 (Ill. 1954); *see also, e.g., State v. Leatherman*, 38 Ark. 81, 88–90 (Ark. 1881) (noting general rule and exceptions); *City of Winter Haven v. State*, 170 So. 100 (Fla. 1936).

   Here, however, the circumstances do not warrant departing from the general rule. Neither the public nor the State has acquiesced in Buffalo Chip's existence for a long period of time. In fact, within months after this Court issued its decision in *Lippold*, the State acted.

[¶26.]        GILBERTSON, Chief Justice, and JENSEN, SALTER, and

DEVANEY, Justices, concur on Issue I.

[¶27.]        **DEVANEY, Justice, writing for the Court as to Issue II.**

> ### II.   *Whether the circuit court erred in its interpretation of SDCL 9-3-1.*

[¶28.]        When the residents of Buffalo Chip petitioned for incorporation, SDCL

9-3-1 provided: "No municipality shall be incorporated which contains less than one

hundred legal residents or less than thirty voters." It is undisputed that Buffalo

Chip had thirty or more voters but did not have one hundred residents at the time

of its incorporation. Buffalo Chip argues that contrary to the circuit court's holding,

it was permitted to incorporate under SDCL 9-3-1 because it met at least one of the

provisions of this statute. To support this interpretation, it characterizes SDCL 9-3-

1 as a statute which conveys *requirements* for incorporation and posits that the

statute *allows* a municipality to incorporate if it has either thirty voters or one

hundred legal residents.

[¶29.]        This argument (along with the analysis set forth in the dissent) fails at

the outset because it ignores the fact that SDCL 9-3-1 is not structured as an

affirmative list of requirements that must be met in order to incorporate. Rather,

the structure of the sentence sets forth two distinct scenarios under which a

municipality is *not* allowed to incorporate.[15] When the prohibitive language is

---

15.    The dissent's characterization of the language in SDCL 9-3-1 as "a distinct
        list of alternatives" under which a municipality "shall become incorporated"
        is completely untethered to the language of the statute. The dissent simply
        ignores the statute's introductory word "no." And Buffalo Chip's suggestion
        that "no" applies only to the noun "municipality" but somehow does not apply

                                                        (continued . . .)

applied to each of the disjunctive scenarios, the interpretation of the statute is clear:
No municipality shall be incorporated which contains less than one hundred legal
residents—or—no municipality shall be incorporated which contains less than
thirty voters. As used in this sentence, "or" means "or". Under *either* scenario, a
municipality is not allowed to incorporate. A municipality is prohibited from
incorporating if it contains less than one hundred residents *or* if it contains less
than thirty voters.[16]

[¶30.]     It is Buffalo Chip's suggested interpretation of the statute that
attempts to read the "or," as used in this prohibitive sentence, as an "and." In order
to interpret this statute as Buffalo Chip and the dissent suggest—and without

---

(. . . continued)

>  to the directly following verb phrase "shall be incorporated," ignores the fact
>  that the use of the word "no" in the context of this sentence is meaningless if
>  it is not applied to the verb phrase. The operative language that "[n]o
>  municipality shall be incorporated" is unquestionably a prohibition. While
>  the use of alternative words and phrases (e.g., "*unless* it contains" or "a
>  municipality *may* incorporate") could be used to restate this sentence as an
>  affirmative statement of the requirements to incorporate, such are not found
>  in the version of SDCL 9-3-1 at issue. Thus, the interpretation suggested by
>  Buffalo Chip and the dissent requires reading language into the statute that
>  is simply not there. We are precluded from doing so under well-established
>  rules of statutory interpretation. *See Olson v. Butte Cnty. Comm'n*, 2019 S.D.
>  13, ¶ 10, 925 N.W.2d 463, 466 (citation omitted) ("When we interpret
>  legislation, we 'cannot add language that simply is not there.'").

16.   This interpretation is entirely in line with the authority cited by the dissent.
      *See State v. Krebs*, 2006 S.D. 43, ¶ 12, 714 N.W.2d 91, 96 ("any one or more"
      of the factors related in the statute suffice). It is also consistent with the
      special concurrence's citation of grammatical principles explaining that a
      prohibitive sentence containing the disjunction "or" prohibits all the elements
      in the list—any one element will suffice. *See supra* Special Concurrence ¶ 49
      (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation
      of Legal Texts* 119–20 (2012)).

changing the prohibitive tone—the statute would have to be rewritten as follows: "No municipality shall be incorporated which contains less than one hundred legal residents *and* less than thirty voters." Written in this fashion, a municipality is only prohibited from incorporating if *both* scenarios are present—less than one hundred residents *and* less than thirty voters. That is clearly not what this statute says.[17]

[¶31.]      The statute could have been drafted in a different manner, i.e., the one suggested by Buffalo Chip and the dissent. Instead of listing scenarios in which incorporation is prohibited, the statute could have been drafted to list the necessary requirements to incorporate. In fact, that is the change in sentence structure that occurred when the Legislature amended SDCL 9-3-1 in 2016—likely in response to this very grammatical debate that arose in conjunction with the litigation here. The statute now expressly requires that would-be municipalities have a minimum number of voters and residents: "A municipality may not be incorporated unless it

---

17.      Prior versions of SDCL 9-3-1 cited by the dissent further support this analysis of the relevant language because they mirror the sentence structure at issue here. Prior to 1905, there was no minimum number of residents or number of voters required to incorporate. The 1877 statute cited by the dissent spoke only to the number of qualified voters that must sign a petition to incorporate. *See* Pol.C. 1877 ch. 24 § 4. Thereafter, the 1905 statute and the later versions (up until the 2016 amendment) plainly prohibit incorporation if either of two scenarios are present. *See* 1905 S.D. Sess. Laws ch. 169. Therefore, the dissent's characterization of the early enactments as "alternative options for incorporation" suffers from the same flaw present in the dissent's analysis of the more recent version of the statute—it ignores the sentence structure of the actual language employed.

contains [at] least one hundred legal residents and at least forty-five registered voters."[18] *Id.*

[¶32.] According to Buffalo Chip, however, when "the wording of an act is changed by amendment, it is evidential of an intent that the words shall have a different construction."[19] *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 17, 709 N.W.2d 824, 831. It then asks, "If the Legislature intended for SDCL 9-3-1 to be read conjunctively, why did it need to amend it in this fashion?" This argument is untenable based on the plain language of the statute. Aside from the increase in the required number of voters, the result under either version of the

---

18. The full text of the 2016 legislative amendment to SDCL 9-3-1 reads as follows:

    > ~~No municipality shall be incorporated which contains less than one hundred legal residences or less than thirty voters.~~ <u>A municipality may not be incorporated unless it contains as least one hundred legal residents and at least forty-five registered voters. For purposes of this section, a person is a legal resident in the proposed municipality if the person actually lives in the proposed municipality for at least ninety days of the three hundred sixty-five days immediately preceding the filing of the petition or is an active duty member of the armed forces whose home of record is within the proposed municipality.</u>

    This current version of the statute appears to contain a typographical error stating "*as* least," but any error in the current version is insignificant to the analysis in this case.

19. The Court has the discretion to determine whether a subsequent legislative amendment has any bearing on a statute's meaning as originally expressed. *See Hot Springs Indep. Sch. Dis. No. 10 v. Fall River Landowners Ass'n*, 262 N.W.2d 33, 38 (S.D. 1978). However, "if the court does consider a subsequent amendment, the court must decide whether the purpose of the amendment was for clarification or whether the amendment altered the law." *Id.* at 39. Here, given our construction of the statute's earlier text, we conclude that the legislative amendment was simply a change in sentence structure to clarify, rather than alter, the meaning of the original statute.

statute is the same. When stated as a prohibition (former version of the statute applied in this case): No municipality may be incorporated which contains *less than* a certain number of residents *or* less than a certain number of voters. When stated in the permissive sense (current version of the statute): a municipality may not incorporate *unless* it contains *at least* a certain number of residents *and* a certain number of voters.[20] In the former version "or" means "or" (either scenario will suffice to prohibit incorporation), and in the current version "and" means "and" (both requirements must be met to incorporate). Once SDCL 9-3-1 is interpreted *as written*, the lengthy debate as to whether "or" means "and" is unnecessary.

[¶33.]    We affirm.

[¶34.]    JENSEN and SALTER, Justices, concur on Issue II.

[¶35.]    GILBERTSON, Chief Justice, dissents on Issue II.

[¶36.]    KERN, Justice, concurs specially on Issue II.

GILBERTSON, Chief Justice, dissenting.

[¶37.]    Today the majority fails to give heed to our long-honored canons of statutory interpretation. Its holding is untethered without a thread of case law to support it. To uphold this Court's interpretation of our state's statutes, I must respectfully dissent on Issue II.

[¶38.]    The applicable text of SDCL 9-3-1 in force at the time of this dispute stated as follows: "No municipality shall be incorporated which contains less than

---

20. Much of the grammatical debate has centered on the use of the term "no" to make a sentence prohibitive. However, it is equally important to consider the comparative use of such terms as "unless" and "at least", which changes the prohibitive tone of a statement to one that is permissive.

one hundred legal residents or less than thirty voters." Today, the majority claims the statute must be read as two distinct scenarios. I agree with this contention. But I part ways at its application.

[¶39.]        As applied by the majority, both "one hundred legal residents" and "less than thirty voters" independently act as a prohibition on incorporation. If either occurs, a municipality shall *not* become incorporated. This interpretation is against the plain language of the statute. Rather, the statute provides a distinct list of alternatives. A municipality shall become incorporated if it either surpasses "one hundred legal residents" or "thirty voters." This reading alone comports with the literal text of the statute and our canons of statutory interpretation.

[¶40.]        "This [C]ourt assumes that statutes mean what they say and that legislators have said what they meant." *Farm Bureau Life Ins. Co. v. Dolly*, 2018 S.D. 28, ¶ 9, 910 N.W.2d 196, 199 (quoting *In re Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D. 1984)). "When the language in a statute is clear, certain[,] and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.*, 910 N.W.2d at 200 (quoting *Rowley v. S.D. Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 7, 826 N.W.2d 360, 363-64). "The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect." *Rowley*, 2013 S.D. 6, ¶ 7, 826 N.W.2d at 363 (quoting *Rapid City v. Estes*, 2011 S.D. 75, ¶ 12, 805 N.W.2d 714,

718). *See also Rhines v. S.D. Dep't of Corr.*, 2019 S.D. 59, ¶ 13, 935 N.W.2d 541, 545 (summarizing our rules of statutory construction).

[¶41.]     The majority is correct that "or" is a disjunctive word. *State v. Lafferty*, 2006 S.D. 50, ¶ 7, 716 N.W.2d 782, 785. And the Legislature's use of the word "or" suggests an intent to create a disjunctive list. *Lake Hendricks Improvement Ass'n v. Brookings Cnty. Plan. & Zoning Comm'n*, 2016 S.D. 48, ¶ 22, 882 N.W.2d 307, 314.

[¶42.]     However, the majority's reading falters by splitting and inserting words into the statute. It claims the statute reads as, "No municipality shall be incorporated which contains less than one hundred legal residents—or—no municipality shall be incorporated which contains less than thirty voters." This reading overlooks words within the statute. The statute expressly states, "No municipality shall be incorporated which contains . . . ." SDCL 9-3-1. Read as one complete sentence, it provides two alternative options for a municipality to become incorporated. It may either surpass one hundred residents or surpass thirty voters.

[¶43.]     Unlike the majority's unsupported interpretation, this reading is in conformity with the Court's prior holdings interpreting disjunctive lists. Our Court has a long history, commencing shortly after statehood, of defining disjunctive lists as providing alternatives. In *State v. Pirkey*, the Court when examining a disjunctive list contained in a penal statute noted, "[i]f, as is common in legislation, a statute makes it punishable to do a particular thing specified, 'or' another thing, 'or' another, one commits the offense who does any one of the things, or any two, or more, or all of them." 22 S.D. 550, 118 N.W. 1042, 1044 (1908), *rev'd on other grounds*, 24 S.D. 533, 124 N.W. 713 (1910). In *State v. Krebs*, we held that a statute

containing factors, separated by a disjunctive, requires only "one or more" of the factors to be met to adhere to the statute's requirement. 2006 S.D. 43, ¶ 12, 714 N.W.2d 91, 96. In *State v. Fifteen Impounded Cats*, we were called on to construe the four subsections of SDCL 40-1-5, concerning the impoundment of animals. 2010 S.D. 50, ¶ 14, 785 N.W.2d 272, 278. We held, "[n]otably, these four circumstances are separated in the statute by the disjunctive word 'or' . . . . Thus, the existence of any one or more of these four circumstances allows the warrantless impoundment of an animal." *Id.* (citation omitted). *See also In re Estate of Flaws*, 2016 S.D. 61, ¶ 29, 885 N.W.2d 580, 588 (citation omitted) ("The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately."). This interpretation is hardly unique to South Dakota. In interpreting the meaning of the word "or," the United States Supreme Court has held that "[c]anons of construction indicate that terms connected in the disjunctive in this manner be given separate meanings." *Garcia v. United States*, 469 U.S. 70, 73, 105 S. Ct. 479, 481, 83 L. Ed. 2d 472 (1984). SDCL 9-3-1 provides a disjunctive list of alternatives, any of which a municipality may surpass to become incorporated.

[¶44.]     The majority's lack of a foundation is further found when examining the statutory history of SDCL 9-3-1. The statute has a long history of listing alternative options for incorporation. The Revised Codes of the Dakota Territory set the figure at "not less than one-third of the whole number of qualified voters residing within such territory . . . ." Pol.C. 1877 ch. 24, § 4. That requirement remained the same when South Dakota became a state in 1889. *See* R. Pol.C. 1903 ch. 15, § 1420. However, in 1905, the Legislature split the requirements creating

alternatives: "Provided, that no town shall be incorporated which contains less than two hundred legal residents, or less than fifty qualified voters." 1905 S.D. Sess. Laws ch. 169, § 1. Apparently, the Legislature deemed these options as excessive as in 1909 it amended the statute to "*provided*, that no town shall be incorporated which contains less than one hundred legal residents, or less than thirty qualified voters." 1909 S.D. Sess. Laws ch. 73, § 1. The statute has a long history of providing alternative options for a municipality to become incorporated.

[¶45.]     Like the interpretation of the majority, the special concurrence is entirely devoid of a binding foundation. For four pages, the opinion tries to rationalize why, for the first time in this Court's history, we should construe "or" as "and." Its reasoning substitutes binding South Dakota case authority with grammatical theorems and anecdotes. This Court has never taken the view that "or" means "and." To the contrary, we consistently hold the opposite.[21] *See*

---

21.     North Dakota follows this same interpretation of the definition of "or."

"Unlike the term 'or,' which is disjunctive in nature and ordinarily indicates an alternative between different things or actions, the term 'and' is conjunctive in nature and ordinarily means in addition to.' 'The literal meaning of the terms "and" and "or" should be followed unless it renders the statute inoperable or the meaning becomes questionable.'"

*Christl v. Swanson*, 2000 N.D. 74, ¶ 12, 609 N.W.2d 70, 73 (citations omitted).

In an application of this holding, the court in another case reasoned:

"In effect, Silseth asks us to construe the statutory proscription of 'obstruct or plow up' to actually mean 'obstruct and plow up.' Words used in a statute are to be understood in their ordinary sense unless a contrary intention plainly appears. In its ordinary sense, the term 'or' is a conjunction indicating an alternative between different things or actions.

(continued . . .)

*Lafferty*, 2006 S.D. 50, ¶ 7, 716 N.W.2d at 785 ("or" is a disjunctive word); *Lake Hendricks Improvement Ass'n*, 2016 S.D. 48, ¶ 22, 882 N.W.2d at 314 (use of "or" shows Legislature's intent to create disjunctive classes); *State v. Bosworth*, 2017 S.D. 43, ¶ 23, 899 N.W.2d 691, 697 (use of disjunctive indicates alternatives which are to be treated separately). The special concurrence claims "or" still means "or" in certain scenarios, stating that "context matters." I do not know how many times the word "or" appears in the South Dakota Codified Laws. I am sure it is legion. To now hold that certain statutes that contain "or" might really mean "and," invites a significant amount of uncertainty where none existed before. "Or" simply means "or."

[¶46.] Without South Dakota case authority to support its premises, the majority and special concurrence attempt to construe the phrase, "no municipality shall be incorporated which contains less than one hundred legal residents or less than thirty voters," to provide two prohibitive scenarios for incorporation. "We

---

(. . . continued)

> *Silseth* has cited no legislative history or other authority which evinces an intent by the Legislature that the word 'or' in Section 24-12-02(2) be construed other than in its ordinary sense. The statute unambiguously proscribes plowing of a section line, irrespective of whether or to what degree that action obstructs the section line. Where the Legislature has clearly spoken, we are not free to rewrite the statute to engraft the additional requirement that the plowing also obstruct the public's access for purpose of travel. Silseth's remedy, if any, lies with the Legislature."

*State v. Silseth*, 399 N.W.2d 868, 870 (N.D. 1987) (citations omitted).

The views of the North Dakota Supreme Court are particularly telling as the statutory interpretation issue now before us has its origins in the statutes of the Dakota Territory, which upon statehood for both states carried over into their post-1889 laws.

cannot lift our judicial pens and amend unambiguous statutes." *State v. Bryant*, 2020 S.D. 49, ¶ 31, 948 N.W.2d 333, 341. This Court must continue to interpret statutes as it has since statehood, by reading the plain words printed on the page.

[¶47.] As such, I respectfully dissent. I would reverse the circuit court and remand with instructions to enter judgment in favor of Buffalo Chip.

KERN, Justice, concurring specially.

[¶48.] I agree with Justice DeVaney's analysis but write specially to set forth additional reasons why the circuit court correctly interpreted SDCL 9-3-1. To begin, it is necessary to review several grammatical principles regarding the difference between a conjunction and a disjunction. Typically, use of the word "and" links a conjunctive list, which communicates that all the elements listed in the connected clauses are required. For instance, "You must eat a healthy dinner and get plenty of rest" means that you must do both. The word "or," in contrast, ordinarily joins a disjunctive list to communicate a choice between exclusive possibilities, such as "you must have a valid driver's license or valid government-issued ID."

[¶49.] Yet there are nuances to these rules that may occur when a sentence includes negatives, plurals, and other specific wording. Bryan A. Garner, *A Dictionary of Modern Legal Usage* 624 (2d ed. 1995). For example, when a negative word, such as "no," is inserted into the sentence, the general rules change. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119–20 (2012). Take, for instance, the example postured by the State: "No food or drink in the courtroom." This sentence is a disjunctive, but it communicates a

prohibition. Therefore, all elements in the list (food *and* drink) are prohibited from the courtroom.

[¶50.]     In contrast, with a conjunctive prohibition, "the listed things are individually permitted but cumulatively prohibited." *Id.* at 119. "After a negative, the conjunctive *and* is still conjunctive: *Don't drink and drive.* You can do either one, but you can't do them both. But with *Don't drink or drive*, you cannot do either one: Each possibility is negated. This singular-negation effect, forbidding doing *anything* listed, occurs when the disjunctive *or* is used after a word such as *not* or *without.*" *Id.* As Scalia and Garner noted, "[t]he principle that 'not A, B, *or* C' means 'not A, not B, *and* not C is part of what is called *DeMorgan's theorem.*'"[22] *Id.*

[¶51.]     Buffalo Chip's argument—that the rules of a prohibitive disjunction do not apply because, in its view, the negative word must immediately precede and relate to the disjunctive phrase to qualify as a disjunctive prohibition—contravenes the purpose of a prohibitive disjunction as a grammatical tool. A disjunction indicating a prohibition is used to communicate a series of prohibited behavior: "You must not do A, B, or C." The phrase "must not" carries over to A, B, *and* C, even in the presence of verbs and nouns positioned between the prohibition and the list. Therefore, the actor must not do A, must not do B, and must not do C. Consider, for illustrative purposes, a phrase from the federal Constitution: "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Like the language of SDCL 9-3-1, a noun and a verb

---

22.    See *Schane v. International Board of Teamsters* for an instructive discussion regarding "De Morgan's Laws"—"the rule of inference that *not (X or Y)* is equivalent to *not X and not Y*[.]" 760 F.3d 585, 589 (7th Cir. 2014).

separate the prohibition from the list, and like SDCL 9-3-1, the prohibition applies to each item in that list. Of course, "context matters." *Schane*, 760 F.3d at 590. Certainly, our founding fathers did not intend to allow the government to deprive people of their property without due process so long as life and liberty were preserved. And while there are structural differences between the sentence from the Fifth Amendment and SDCL 9-3-1, language from the former exemplifies a situation where use of the word "or" is not used in an either/or posture.

[¶52.] This does not mean that "or" means "and." Instead, the "or" in this context is merely used to connect the commanding phrase to each element in the list. The authorities the dissent cites to contradict this principle are entirely inapposite. In each instance, the statute at issue analyzed a disjunctive phrase or clause *without* a prohibition. *See, e.g.*, *State v. Krebs*, 2006 S.D. 43, ¶ 12, 714 N.W.2d 91, 96 (analyzing SDCL 26-11-4(2), which states: "[w]hether the alleged felony offense was committed in an aggressive, violent, premeditated, *or* willful manner."). (Emphasis added).[23] The function that "or" served in the case law

---

23. In addition to *Krebs*, the dissent cites a number of other distinguishable cases for the proposition that "or" simply means "or." I agree that *had* SDCL 9-3-1 involved an ordinary disjunctive rather than a prohibitive one, our case law would ordinarily foreclose reading "or" as "and." However, SDCL 9-3-1 contains a prohibition which changes the grammatical landscape.

A brief assessment of the language interpreted in the cases cited by the dissent proves the point that none contain a prohibition and are therefore not relevant to answer the question before us. *See, e.g.*, *State v. Lafferty*, 2006 S.D. 50, ¶ 7, 716 N.W.2d 782, 784–85 (analyzing SDCL 22-22-1, which states that "[r]ape is an act of sexual penetration accomplished with any person under any of the following circumstances" followed by a disjunctive list connected with "or"); *Lake Hendricks Improvement Ass'n v. Brookings Cnty. Planning & Zoning Comm'n*, 2016 S.D. 48, ¶ 22, 882 N.W.2d 307, 314

(continued . . .)

presented by the dissent varies drastically from its function in a prohibitive sentence. In contrast, applying the rules regarding prohibitive disjunctives to SDCL 9-3-1 requires that both conditions in the list be met—one hundred legal residents and thirty voters.

[¶53.] Buffalo Chip's further argument that the Legislature clarified an ambiguity within SDCL 9-3-1 when it amended the statute in 2016 also fails. Buffalo Chip ignores the fact that the primary changes made by the Legislature were substantive—an increase in the number of requisite voters from thirty to forty-five and the inclusion of language defining a "legal resident" for the purposes of this statute. The Legislature also amended SDCL 9-3-1.1 and SDCL 9-3-2 through -5. Nevertheless, even when assuming an ambiguity existed, I find persuasive the State's argument that interpreting the former version of the statute at issue as Buffalo Chip suggests could lead to absurd conclusions. This contradicts

---

(. . . continued)

      (analyzing an older version of SDCL 11-2-61, which provided that: "[a]ny person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, *or* any taxpayer . . . of the county") (emphasis added); *State v. Bosworth*, 2017 S.D. 43, ¶ 23, 899 N.W.2d 691, 697 (analyzing SDCL 22-11-28.1, which states "[a]ny person who offers any false *or* forged instrument, knowing that the instrument is false or forged, for filing, registering, or recording in a public office, which instrument, if genuine, could be filed, registered, or recorded under any law of this state or of the United States, is guilty of a Class 6 felony") (emphasis added); *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 14, 785 N.W.2d 272, 278 (analyzing SDCL 40-1-5, which permits impoundment of an animal without a warrant if: "(1) the animal is 'severely injured,'(2) the animal is 'severely diseased,'(3) the animal is 'suffering and any delay in impounding the animal would continue to cause the animal extreme suffering *or* . . .' (4) 'other exigent circumstances exist'"); *Garcia v. United States*, 469 U.S. 70, 73, 105 S. Ct. 479, 481, 83 L. Ed. 2d 472 (1984) (analyzing 18 U.S.C. § 2114, which states, in relevant part: "any person having lawful charge, control or custody of any mail matter *or of any money or other property of the United States . . .*"). (Emphasis added).

our well-established rules of statutory construction that we avoid absurd or illogical results. *See Klein v. Sanford USD Med. Ctr.*, 2015 S.D. 95, ¶ 13, 872 N.W.2d 802, 807. As the circuit court noted, under Buffalo Chip's interpretation, a city within our state could be comprised only of residents who reside entirely outside of its boundaries, but who choose to register their voting addresses within the municipal boundaries. It would be illogical to hold that this was the Legislature's intent when drafting the statute.